HEISER *v.* WOODRUFF ET AL.

No. 496.   Argued March 5, 1946.—Decided April 22, 1946.

*Leonard J. Meyberg* and *Rupert B. Turnbull* argued the cause and filed a brief for petitioner.

*Louis A. Fischl* argued the cause for respondents. With him on the brief were *H. A. Ledbetter* and *Thos. W. Champion.*

Opinion of the Court by Mr. Chief Justice Stone, announced by Mr. Justice Black.

This is a proceeding in bankruptcy on objections to the allowance of petitioner's claim in bankruptcy based upon a money judgment acquired against the bankrupt before the bankruptcy. Respondents objected to allowance of the claim on the ground that, so far as here relevant, the judgment was procured by fraud, that is, by perjured allegations in the complaint in the suit in which the judgment was rendered, and by perjured testimony as to the value of property alleged to have been converted by the defendant.

The referee in bankruptcy disallowed the claim. On the referee's certificate the district court, sitting in bankruptcy, allowed the claim, sustaining petitioner's contention that the issue of fraud in procurement of the judgment had been previously litigated and decided in petitioner's favor in proceedings in which the petitioner and the bankrupt or his trustee, or both, had been parties, and was therefore *res judicata.*

The Court of Appeals for the Tenth Circuit reversed. 150 F. 2d 869. Relying upon our decisions in *Pepper* v. *Litton,* 308 U. S. 295, and *Prudence Realization Corp.* v. *Geist,* 316 U. S. 89, it held that the court of bankruptcy could go behind the prior adjudications of the validity of the judgment and decide for itself the questions previously litigated and decided, whether the cause of action on which the judgment was entered was meritorious, and whether the claim in bankruptcy should be rejected because based on a judgment procured by claimant's fraud. The Court of Appeals accordingly remanded the cause to the district court for further proceedings on the objections to allowance of the claim. We granted certiorari, 326 U. S. 715, upon a petition which raises the questions whether the bankruptcy court may re-adjudicate the merits of a cause of action on which a judgment against

the bankrupt, proved as a claim in bankruptcy, was entered and may disregard a previous adjudication between the parties that the judgment was not procured by fraud.

. Woodruff, the bankrupt, was adjudicated as such on his voluntary petition on July 5, 1939. Petitioner, proceeding under § 63 (a) (1) of the Bankruptcy Act, 11 U. S. C. 103 (a), which provides that a fixed liability, evidenced by a judgment, is a provable claim in bankruptcy, filed his proof of claim in the bankruptcy court upon a default judgment against Woodruff for the sum, including accrued interest and costs, of more than $278,000. The suit in which the judgment was procured was filed in the United States District Court for the Southern District of California in July, 1935. . Judgment was entered for petitioner on March 20, 1939, on proof taken of service of summons on January 31, 1939, and of Woodruff's default and on evidence given by the petitioner.

The suit was based on diversity of citizenship, and the cause of action alleged was in substance that Woodruff had procured property of petitioner, consisting of rough sapphires, opals and zircons, of a stated value of $164,000, by false pretenses and false representations, the details of which are not now material, and had thereafter converted them to his own use.

On March 29, 1939, shortly after the judgment was rendered, Woodruff filed a motion in the trial court to set it aside. The motion, so far as it was based upon the alleged failure to serve the defendant Woodruff with process, was denied on June 8, 1939. But the court, on stipulation of the parties, directed that a hearing be held to determine the value of the converted gems and provided that at the hearing "such competent evidence as either party desire to present be received" and considered by the court "in determining the actual value of the property" which the plaintiff alleged was converted by defendants. The

court's order further provided that the judgment should be reduced in the amount by which the adjudged value of the gems exceeded the actual value as found at the hearing. After a contested hearing at which evidence, oral and documentary, was received, the trial court made a minute order stating that the court found that the values of the converted property were those alleged in the complaint, and declined to give further consideration to the motion to set aside the judgment. No appeal was taken from the judgment, and no review was had of the minute order or of the denial of the motion to set the judgment aside.

On August 23, 1939, on application of Jackson, the trustee of the bankrupt's estate, which certain creditors supported, the referee in bankruptcy authorized and directed the trustee "to take such legal steps as may be proper and necessary under the law to vacate, set aside and to avoid" the judgment, and authorized him to retain counsel in the Southern District of California for that purpose. This was followed by a motion on behalf of the bankrupt's trustee, and the bankrupt, in the district court for that district, to set aside the judgment on the grounds, among others, that no proper service of process had been made on the defendant, that the complaint did not state a cause of action, that "a fraud was practiced upon the above entitled court with respect to the entry of said judgment", and that the trustee and the bankrupt "have been prevented from presenting said defense upon any trial of the merits by reason of fraud, accident, surprise and excusable neglect as is more particularly shown by the affidavits" upon which the motion was made. The affidavit of the trustee in support of the motion stated that the judgment was "based upon fictitious values and was obtained by methods which amount to a constructive fraud upon the other creditors and your affiant, as representative of said creditors". Counter affidavits by peti-

tioner and his attorney in the suit in which the judgment was rendered denied the allegations of fraud.

The district court denied the motion, and the Court of Appeals for the Ninth Circuit affirmed. 111 F. 2d 310. It overruled all the alleged grounds for setting aside the judgment, holding that the service of process was valid and that in any case the defendant had appeared in the suit by entering into the stipulation for trial of the issue of value of the property alleged to have been converted and participating in the hearing on that issue. It also held that the charge of fraud was denied and unsupported by proof, adding "that ground of appellants' motion appears to have been abandoned." There was no review of this decision.

The court below, in rejecting petitioner's plea of *res judicata,* and in directing inquiry into the merits of the original cause of action and into the allegation of fraud in procurement of the judgment, rested its decision upon the ground that the bankrupt's trustee had failed to place before the California district court any contention or proof that petitioner's testimony, particularly as to the value of the converted property, was perjured, that the bankrupt was not indebted to petitioner, or that the allegations of the complaint were untrue. The court, relying on *Pepper* v. *Litton, supra,* also held that the bankruptcy court, being a court having equity powers, was not bound by the principles of *res judicata* as to issues which were not pressed before the California district court, and that the authority of the bankruptcy court as a court of equity included the power to inquire into the validity of the claim upon which the judgment, presented as a claim against the estate, was based.

We need not consider whether, apart from the requirements of the full faith and credit clause of the Constitution, the rule of *res judicata* applied in the federal courts, in diversity of citizenship cases, under the doctrine of

*Erie R. Co.* v. *Tompkins,* 304 U. S. 64; cf. *Guaranty Trust Co.* v. *York,* 326 U. S. 99; *Holmberg* v. *Armbrecht,* 327 U. S. 392, can be other than that of the state in which the federal court sits. For nothing decided in *Erie R. Co.* v. *Tompkins, supra,* requires a court of bankruptcy, in applying the statutes of the United States governing the liquidation of bankrupts' estates, to adopt local rules of law in determining what claims are provable, or to be allowed, or how the bankrupt's estate is to be distributed among claimants. Cf. *Board of Comm'rs* v. *United States,* 308 U. S. 343; *Deitrick* v. *Greaney,* 309 U. S. 190; *D'Oench, Duhme & Co.* v. *F. D. I. C.,* 315 U. S. 447; *Helvering* v. *Stuart,* 317 U. S. 154, 161–2; *Sola Electric Co.* v. *Jefferson Co.,* 317 U. S. 173, 176; *Wragg* v. *Federal Land Bank,* 317 U. S. 325, 328; *Clearfield Trust Co.* v. *United States,* 318 U. S. 363. In passing upon and rejecting or allowing the proof of claim in this case the court of bankruptcy proceeds—not without appropriate regard for rights acquired under state law—under federal statutes which govern the proof and allowance of claims. based on judgments. In determining what judgments are provable and what objections may be made to their proof; and in determining the extent to which the inequitable conduct of a claimant in acquiring or asserting his claim in bankruptcy, requires its rejection or its subordination to other claims which, in other respects are of the same class, the bankruptcy court is defining and applying federal, not state, law. See *Prudence Realization Corp.* v. *Geist, supra,* 95, 96 and cases cited; cf. *United States* v. *Pelzer,* 312 U. S. 399, 402–03.

It is true that a bankruptcy court is also a court of equity, *Local Loan Co.* v. *Hunt,* 292 U. S. 234, 240, and may exercise equity powers in bankruptcy proceedings to set aside fraudulent claims, including a fraudulent judgment where the issue of fraud has not been previously adjudicated. *Pepper* v. *Litton, supra,* 306. In appro-

priate cases, acting upon equitable principles, it may also subordinate the claim of one creditor to those of others in order to prevent the consummation of a course of conduct by the claimant which, as to them, would be fraudulent or otherwise inequitable. *Taylor* v. *Standard Gas Co.,* 306 U. S. 307; *Pepper* v. *Litton, supra; Prudence Realization Corp.* v. *Geist, supra; American Surety Co.* v. *Sampsell,* 327 U. S. 269. But we are aware of no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata,* which is founded upon the generally recognized public policy that there must be some end to litigation and that when one appears in court to present his case, is fully heard, and the contested issue is decided against him, he may not later renew the litigation in another court. *Baldwin* v. *Traveling Men's Assn.,* 283 U. S. 522, 525–6.

Before *Erie R. Co.* v. *Tompkins* it was recognized by this Court that, apart from the full faith and credit clause, a judgment duly rendered in one court will be recognized as *res judicata* in a suit between the same parties in a federal court. *Cromwell* v. *County of Sac,* 94 U. S. 351; *Case* v. *Beauregard,* 101 U. S. 688; *Baltimore S. S. Co.* v. *Phillips,* 274 U. S. 316; *Grubb* v. *Public Utilities Comm'n,* 281 U. S. 470. See *Baldwin* v. *Traveling Men's Assn., supra,* and cases cited; cf. *Chicago, R. I. & P. R. Co.* v. *Schendel,* 270 U. S. 611; *Milwaukee County* v. *White Co.,* 296 U. S. 268, 272–3. It has been held in non-diversity cases, since *Erie R. Co.* v. *Tompkins,* that the federal courts will apply their own rule of *res judicata. Sunshine Coal Co.* v. *Adkins,* 310 U. S. 381, 403; *Jackson* v. *Irving Trust Co.,* 311 U. S. 494, 503. This Court has also required that effect be given in both state and federal courts to a plea of *res judicata* arising from decrees of a bankruptcy court. *Stoll* v. *Gottlieb,* 305 U. S. 165; *Chicot County Dist.* v. *Bank,* 308 U. S. 371. And it is well settled that where the trustee in bankruptcy unsuccessfully litigates an issue out-

side the bankruptcy court the decision against him is binding in the bankruptcy court. *Davis* v. *Friedlander,* 104 U. S. 570; *Fischer* v. *Pauline Oil Co.,* 309 U. S. 294, 302–03. At least to the extent that the issue of fraud raised by the objections to petitioner's claim as between petitioner and the bankrupt has been litigated and decided before the bankruptcy and has since been litigated between the petitioner and the trustee in bankruptcy, who represents the bankrupt and his creditors, that issue is now *res judicata* and may not further be litigated in the bankruptcy proceeding. Hence we turn to the question, what issues essential to the allegations that the judgment was procured by fraud have been so litigated.

Examination of the record in this proceeding, including the objections filed to petitioner's claim, the applications of the bankrupt, the trustee, and the creditors, for authority to attack the judgment in the District Court of Southern California, and the proceedings instituted in that court for that purpose, make plain the nature of the fraud charged against petitioner. Shortly stated it is that in the course of transactions with petitioner the bankrupt acquired possession of and converted to his own use a quantity of worthless minerals, owned or previously owned or possessed by petitioner, who, by means of perjured allegations in the complaint and perjured testimony as to their amount and value, procured a default judgment against the bankrupt for an amount in excess of their value.

It is evident that an essential element of the claim of fraud is that the alleged converted minerals were worth substantially less than the $164,000 alleged to be their value in the complaint, for which the judgment was rendered. But before the bankruptcy this issue of value had been litigated between petitioner and the bankrupt in the District Court for Southern California. In the course of the proceedings had on the bankrupt's motion to set aside the judgment, the district court decided the issue

against the bankrupt and declined to disturb the judgment. No appeal was taken from the judgment and consequently there was no review of the denial of the bankrupt's motion to set aside or modify the judgment, or of the court's minute order finding that the converted gems were of the value alleged in the complaint.

The same issue as to value and also the issue whether there was perjured testimony of value were raised in the proceeding later brought in the District Court for Southern California by the trustee in behalf of the bankrupt to set aside the judgment. In his application to the bankruptcy court to direct the trustee to bring the proceeding, the bankrupt had represented that "the material allegations of the complaint filed in said case [in the District Court for Southern California] are untrue"; that "the raw gems described in plaintiff's complaint were at no time of the value of $164,000.00 or any comparable value". As already noted the papers on the motion in behalf of the trustee and the bankrupt to vacate the judgment, set up that the judgment was based on "fictitious values" and was fraudulently procured. In that proceeding the charge of fraud thus alleged was put in issue by the answering affidavits. The denial of the motion by the district court was affirmed by the Court of Appeals for the Ninth Circuit on the ground that the applicants had not sustained their allegations of fictitious value and fraud by any tender of evidence or other proof. This was a final judgment on the issues thus raised, binding on the parties to the proceeding. It is not any the less so, as the Court of Appeals thought, because the moving parties failed to support their allegations by evidence.

In general a judgment is *res judicata* not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit. *Cromwell* v. *County of Sac, supra,* 352; *Grubb* v. *Public Utilities Comm'n, supra,* 479; *Chicot*

*County Dist.* v. *Bank, supra,* 375. But here the alleged fraud was put in issue and the issue was decided against the trustee, the bankrupt and those whom they represent or who claim under them, for failure of proof. After two proceedings, in one of which the bankrupt and in the other of which the bankrupt and his trustee, sought, and were free, to prove that the judgment was based on fraudulently alleged, fictitious values, and in both of which the decision was against them, the principles of *res judicata* preclude the revival of the litigation in the bankruptcy court.

*Pepper* v. *Litton, supra,* lends no support to a different view. Undoubtedly, since the Bankruptcy Act authorizes a proof of claim based on a judgment, such a proof may be assailed in the bankruptcy court on the ground that the purported judgment is not a judgment because of want of jurisdiction of the court which rendered it over the persons of the parties or the subject matter of the suit, or because it was procured by fraud of a party. *Pepper* v. *Litton, supra,* 306; *Chandler* v. *Thompson,* 120 F. 940; *In re Continental Engine Co.,* 234 F. 58; *In re Stucky Trucking & Rigging Co.,* 243 F. 287; *In re Rubin,* 24 F. 2d 289. But it is quite another matter to say that the bankruptcy court may reexamine the issues determined by the judgment itself. It has, from an early date, been held to the contrary. *McKinsey* v. *Harding,* Fed. Cas. No. 8,866; *Ex parte O'Neil,* Fed. Cas. No. 10,527; *In re Ulfelder Co.,* 98 F. 409; *Peters* v. *United States,* 177 F. 885; *Handlan* v. *Walker,* 200 F. 566; *In re Ganet Realty Corp.,* 83 F. 2d 945; *Lyders* v. *Petersen,* 88 F. 2d 9. Nor can an attack be sustained on a judgment allegedly procured by fraudulent representations of the plaintiff, when the charge of fraud has been rejected in previous litigations by the parties to the suit in which the judgment was rendered, or their representatives. *Pepper* v. *Litton, supra,* 306, n. 13; cf. *Mays* v. *Fritton,* 20 Wall. 414; *Jerome* v. *McCarter,* 94 U. S. 734, 737; *McHenry* v. *La Société Française,* 95

U. S. 58; *Davis* v. *Friedlander, supra; Winchester* v. *Heiskell,* 119 U. S. 450, 453; *Grant* v. *Buckner,* 172 U. S. 232, 238.

Neither *Pepper* v. *Litton, supra,* on which respondents chiefly rely, nor the other cases which they cite, sustain the contention that the bankruptcy court, in passing on the validity of creditors' claims, may disregard the principle of *res judicata.* In that case the judgment creditor sought by proof of claim on his judgment to share in the assets of the bankrupt estate, which were insufficient to satisfy the rival claim of another judgment creditor. We assumed, for purposes of decision, that the claim on which the disputed judgment was based was founded on a valid debt. But the court held that as the judgment creditor was also a controlling stockholder of the bankrupt corporation he was a fiduciary for the other creditors of the corporation and, as such, could not prove his claim in competition with other creditors or gain from the estate any personal advantage, security, or priority over them. After referring to certain cases in which creditors' claims had been disallowed and saying: "These cases do not turn on the existence or non-existence of the debt. Rather they involve simply the question of order of payment," 308 U. S. 310, the Court concluded: "Where there is a violation of those principles, equity will undo the wrong or intervene to prevent its consummation. On such a test the action of the District Court in disallowing or subordinating Litton's claim was clearly correct." 308 U. S. 311. Cf. *Taylor* v. *Standard Gas Co., supra.*

Although the trustee in bankruptcy in *Pepper* v. *Litton* had unsuccessfully attacked the judgment in another proceeding in the state courts, this Court pointed out that in that proceeding no question was presented "whether or not the . . . judgment might be subordinated to the claims of other creditors upon equitable principles," 308 U. S. 302–03; and that "the only decree which was asked or could be given in the plaintiff's favor" under the plead-

ings "was for cancellation of the judgment as a record ob-
ligation of the bankrupt." 308 U. S. 303. It was thus
made plain that the theory relied upon as requiring dis-
allowance or subordination of the contested claim rested
upon grounds not previously adjudicated, and we ex-
plicitly noted that the state court did not adjudicate it.
308 U. S. 302–03.*

---

*In *Pepper* v. *Litton*, 308 U. S. 295, the Court found that Litton, a
"dominant and controlling" stockholder of the bankrupt corporation
entered into a "planned and fraudulent scheme" which was "plainly
for the sole purpose of avoiding payment of the Pepper debt," which
was then owed by the corporation. The fraudulent scheme, which was
initiated shortly before the bankruptcy, involved several successive
steps, as follows: Litton procured a judgment in his favor against the
corporation, upon an alleged fictitious claim for salary, which was
entered on confession in its behalf by one of its officers, who was also
an employee of Litton and subservient to his will. A second judgment
having been entered against the corporation upon the debt to Pepper,
and, execution upon the Pepper judgment having been stayed pending
an appeal by the corporation, Litton then became the purchaser of
certain property of the corporation on execution sale under his judg-
ment, and transferred the property to a newly organized corporation
in exchange for all its stock. He then caused the judgment debtor to
be adjudged a bankrupt on its voluntary petition and filed in the
bankruptcy proceeding proof of claim upon the confessed judgment.

In the meantime Pepper had brought suit in the Virginia state
courts to have the Litton judgment set aside as void. Following the
sale of the corporation's property under the Litton execution, the
sheriff instituted an interpleader suit joining Litton and Pepper as
claimants to the proceeds of the execution sale in the sheriff's hands.
Litton and Pepper both answered, asserting claims to the proceeds
subject to an existing prior lien. Thereafter the trustee in bankruptcy,
with the authority of the bankruptcy court, moved in the state court
to set aside the Litton judgment and to quash the execution on the
ground that the judgment was void, since the confession did not con-
form to the Virginia statutes. That court concluded that the Litton
judgment was void, but denied the motion on the ground that the
trustee was estopped to challenge it.

It held that Pepper, in asserting a claim to the proceeds of the
sheriff's sale in the interpleader suit, had treated them as validly
derived from the execution sale on the Litton judgment, and that in
consequence he had elected to recognize the validity of the judgment.

Here when the petitioner brought his suit for conversion he was not a fiduciary for the defendant, Woodruff, or his creditors. There was no equitable ground upon

As at that time Litton had acquired or caused to be withdrawn from the bankruptcy proceedings all the claims against the estate, other than the Pepper judgment, the court held that the trustee was representing only Pepper in the state court suit and that the trustee, as well as Pepper, was estopped to maintain it. The judgment was affirmed on these grounds by the Virginia Supreme Court. *Smith* v. *Litton*, 167 Va. 263, 188 S. E. 214. On objections to the claim on the Litton judgment the district court, sitting in bankruptcy, disallowed the claim. On appeal the Circuit Court of Appeals reversed, holding that the decision and judgment of the state court in *Smith* v. *Litton*, *supra*, were res *judicata* in the bankruptcy proceeding. 100 F. 2d 830.

This Court, in reversing the judgment of the Court of Appeals, pointed out that the challenge to the validity of the Litton judgment in the state court was on the ground that the judgment was irregular or void on its face because the confession of judgment did not conform to the requirements of state law. We also pointed out that under the pleadings and practice in the suit attacking the judgment the validity of the alleged debt for salary was not in issue and no question was in issue or presented whether the Litton judgment might, on equitable principles, be subordinated to the claims of other creditors. We said, page 303: "The only decree which was asked or could be given in the plaintiff's favor" under the pleadings "was for cancellation of the judgment as a record obligation of the bankrupt. It is therefore plain that the issue which the bankruptcy court later considered was not an issue in the trial of the cause in the state court and could not be adjudicated there."

Thus the Court recognized that the judgment of the state court in *Smith* v. *Litton, supra,* was not *res judicata* as to matters later ruled upon by the bankruptcy court and by this Court. Upon this assumption, and assuming also the validity of the alleged salary debt underlying the Litton judgment, this Court held, on equitable principles, that Litton was not free to assert his judgment in competition with other creditors because he had acquired the judgment in breach of the fiduciary obligation which a controlling stockholder of the bankrupt owes to the other creditors, not to secure for himself a personal advantage by way of security or priority over them. Cf. *Taylor* v. *Standard Gas Co.*, 306 U. S. 307.

The decision in *Pepper* v. *Litton* thus affords no support for petitioner's contention that the doctrine of *res judicata* is inapplicable

which his claim or the judgment upon it could be set aside or subordinated to those of other creditors in the bankruptcy proceeding, except that asserted by respondents that the judgment had been procured by a fraud perpetrated on the judgment debtor. That issue, having been twice litigated and decided in the court in which the judgment was rendered, in proceedings brought by the trustee in bankruptcy and the bankrupt, and by the bankrupt alone, may not now be relitigated in the bankruptcy court.

*Reversed.*

MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS dissenting.

We would affirm the judgment for the reasons stated by Judge Bratton writing for the Circuit Court of Appeals. 150 F. 2d 869.

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

MR. JUSTICE RUTLEDGE.

I concur in the result. In my judgment it is necessary, in this case, to do no more than to rule that equitable principles, applicable in bankruptcy in accordance with

---

in a bankruptcy proceeding. Cases on which respondents rely, cited in *Pepper* v. *Litton,* as illustrating the extent to which a court may look behind a judgment proved in bankruptcy to ascertain the nature of a claim upon which the judgment is based, are concerned exclusively with the question of the nature of the liability represented by the judgment, that is, whether it represents a "debt" provable and dischargeable in bankruptcy under §§ 17 and 63 of the Bankruptcy Act. Thus a decree for alimony was held to be not a "debt" but in the nature of a penalty for failure to perform a duty, and not provable or dischargeable in bankruptcy. *Wetmore* v. *Markoe,* 196 U. S. 68. Those cases do not support the ruling of the Court of Appeals below that the bankruptcy court, in determining the validity of a provable claim upon a judgment, may reexamine the issues which were litigated by the bankrupt or his trustee in the suit in which the judgment was rendered or in any other. See *Boynton* v. *Ball,* 121 U. S. 457.

*Pepper* v. *Litton,* 308 U. S. 295, and prior decisions, do not require reexamination by the bankruptcy court, in the circumstances now presented, of the foundations of the judgment which is the basis of the claim in issue. If, as the Court declared in *Pepper* v. *Litton,* the bankruptcy court has power to reject claims, even when previously allowed, "in whole or in part 'according to the equities of the case,'" 308 U. S. at 304,[1] see 11 U. S. C. § 93 (k), I find no reason for qualifying that rule in this case. It necessarily comprehends that the bankruptcy court in the allowance or rejection and ordering of claims shall not be bound by any broad or rigid rule of *res judicata.* That, I think, is the essential ruling of the *Pepper* case.[2]

On the other hand, prior adjudication of the very grounds alleged for disallowing or subordinating a judg-

---

[1] "Allowance and disallowance are judicial acts. . . . In passing on an allowance of claims the court sits as a court of equity, which gives it far-reaching powers 'to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate.' [*Pepper* v. *Litton,* 308 U. S. 295, 308.] Mere reasons of equity may sometimes require that a creditor's claim be either totally disallowed or subordinated to the claims of all or of certain other general creditors . . . . Equities to be weighed in connection with the allowance of a claim may vary in importance. They may in extreme cases be strong enough to warrant disallowance absolutely and entirely. In other cases equity may be satisfied with a mere 'subordination' or postponement of a claim, and its relegation to a rank inferior to that of all general creditors or of a particular group." 3 Collier, Bankruptcy (14th ed.) 185–186. See also 3 *id.* at 1800–1801.

11 U. S. C. § 93 (a) provides: "A proof of claim shall consist of a statement under oath, in writing and signed by a creditor, setting forth the claim; the consideration therefor; whether any and, if so, what securities are held therefor; and whether any and, if so, what payments have been made thereon; and that the claim is *justly owing* from the bankrupt to the creditor." (Emphasis added.)

[2] The case has been so read. Citing it, 3 Collier, Bankruptcy (14th ed.) 1800, says: "The doctrine of *res judicata,* as applied to the bankruptcy court in deciding whether a claim should be allowed, disallowed or subordinated, is subject to the paramount equitable powers of bankruptcy courts to prevent the perpetration of fraud and collusion."

742

ment claim, cannot be irrelevant to what equitable principles may require the bankruptcy court to do in disposing of the claim. And the same may be true also of prior failure to secure such an adjudication when adequate opportunity is afforded by proceedings instituted to set aside or modify the judgment. Cf. *Handlan* v. *Walker*, 200 F. 566. Sound policies of judicial administration, affecting both the bankruptcy court and the court rendering the judgment, may have a similar bearing.

In this case the two separate proceedings had in the District Court for the Southern District of California afforded perhaps more than adequate opportunity for adjudication of the issues now raised in the bankruptcy court, once to the bankrupt, once to his trustee. These proceedings were allowed to be terminated adversely in the one case without appeal, in the other after adverse decision on appeal and without application for certiorari. *Jackson* v. *Heiser*, 111 F. 2d 310. I do not think equity requires a third opportunity to be afforded by the bankruptcy court. On this ground I agree that the judgment should be reversed.