**In the Matter of Florence Irene BOWERS, Debtor.**

**Bankruptcy No. 2–85–00833.**

United States Bankruptcy Court, D. Connecticut.

Feb. 4, 1987.

`Joel N. Sable, Berman, Sable & Boatman, Hartford, Conn., for claimant, Connecticut National Bank.

Richard M. Leibert, Hartford, Conn., for debtor.

Gilbert L. Rosenbaum, Hartford, Conn., Trustee.

## MEMORANDUM OF DECISION

RE: APPLICATION OF CONNECTICUT NATIONAL BANK FOR PARTIAL PAYMENT OF SECURED CLAIM

ROBERT L. KRECHEVSKY, Chief Judge.

At issue in this proceeding is the right of Connecticut National Bank (CNB) to be paid from funds it garnisheed prepetition. No evidentiary hearing has been held, the parties having presented the matter on legal arguments based upon the case file and submitted exhibits.

### I.

Florence Irene Bowers, the debtor, filed a chapter 13 petition on October 3, 1985, without schedules or a plan. The chapter 13 trustee, on November 6, 1985, moved for dismissal of the case on the grounds of the debtor's unreasonable delay and failure to file a plan. The trustee did not pursue the motion when the debtor, on November 21, 1985, filed schedules and a plan. The schedules are confusing and incomplete but disclose real property (the residence) valued at $160,000.00. The debtor claims to have total secured debt of $251,096.22, and total unsecured debt of $55,000.00. She scheduled as exempt household goods valued at $1,500.00, jewelry and sports equipment worth $500.00, a wardrobe of $500.00, and a $100.00 checking account. The debtor's plan, on which a confirmation hearing has yet to be held, provides for thirty-six monthly payments of $600.00 to the trustee. The only creditor for whom the plan apparently provides payment is Hartford National Bank and Trust Company, the predecessor to CNB. As to one CNB claim, the plan provides:

2. From the payments so received, the trustee shall make disbursements as follows:

. . . . .

(d) The following lien claims [sic] shall be deemed to be unsecured by virtue of 11 U.S.C. § 522(f)[1] or § 506(a). Lien of $75,000.00 held by Hartford National Bank.

. . . . .

4. OTHER: The debtor owes a disputed debt to Hartford National Bank involving a promissory note, mortgage all of which [sic] were the subject of a Superior Court and Appellate Court decisions [sic]. Hartford National Bank obtained a garnishment on the proceeds of a settlement being held by attorneys Moller, Horton & Feinberg [sic]. The sum of money garnished is approximetly [sic] $17,000.00. Debtor claims her exemption under 11 U.S.C.

---

1. That section provides in part:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien. . . .

§ 522(d)(5) [2] of $3,750.00 in said fund. Debtor shall pay to Hartford National Bank the difference between the garnished amount and debtors [sic] statutory exemption which is approximately $13,250.00. Debtor proposes to pay an additional amount of $12,500.00 to Hartford National Bank on it's [sic] unsecured portion of its claim. Said payment shall be made in monthly installments of $600.00.

On March 6, 1986, CNB, the trustee, and the debtor submitted a stipulation to the court seeking a court order that the monies ($17,506.80) garnisheed prepetition by CNB and held by Moller, Horton & Fineberg be transferred to debtor's counsel to be held in an interest-bearing account pending further order of the court. The stipulation provided that all rights of the parties, including the debtor's "claim [to] her bankruptcy exemption, if any," would be transferred to such account. The court entered the requested order.

CNB commenced the present contested matter on October 14, 1986, by an "application" (*cf.* Bankr.R. 9013, 9014) requesting that the court order debtor's counsel to pay over the full amount of the escrow to CNB, based upon CNB's valid garnishment of said sum, CNB's filed proof of claim showing a debt of $70,912.42, and debtor's schedules and plan listing CNB as a creditor with a $75,000.00 claim. The debtor, on December 1, 1986, filed both an objection to CNB's proof of claim, stating that the debtor was not indebted to CNB, and a motion to avoid CNB's judicial lien because it "impairs the debtor-plaintiff's $4,050.00 [sic] exemption in said item of personal property." The parties did not request a hearing on the debtor's motion, presumably on the basis that resolution of this pending proceeding may render the motion moot.

## II.

The debtor and CNB address two issues in their memoranda of law: (1) whether a prior state-court judgment has conclusively determined the validity of CNB's claim, and (2) whether the debtor's chapter 13 case allows her to claim the judicial lien avoidance benefits of § 522(f). The first issue arises out of the following background disclosed by the exhibits filed in the proceeding.

## A.

CNB, in 1980, brought a mortgage foreclosure action against the debtor's residence in state court. The trial court granted judgment to the debtor on the complaint and on her counterclaim for cancellation of CNB's mortgage. CNB appealed the judgment to the Connecticut Appellate Court, which found error in part by the trial court. *Hartford National Bank and Trust Company v. Bowers,* 3 Conn.App. 656, 491 A.2d 431 (1985). The appellate court opinion sets forth the pertinent facts.

On November 1, 1978, Florence Bowers executed a demand note for $50,000 in favor of the plaintiff. Bowers then reduced the sum due to $40,000 and, on April 23, 1980, she executed a replacement demand note for the reduced amount. This renewal note was secured by a mortgage on her property. Approximately eight days later, the plaintiff demanded full payment of the note and, in September 1980, instituted this action for foreclosure of its mortgage.

The plaintiff alleged that the demand was made because it had discovered that its mortgage was the third on the property rather than the second as it had been led to believe. Bowers responded that no such misrepresentation had been made but that, in fact, the demand was made to bring pressure to bear on her husband in unrelated business dealings he had with the plaintiff.

The trial court found that the plaintiff had initiated the note renewal negotiations, that it had no security for its original note and that the mortgage it took in

---

**2.** Section 522(d)(5) authorizes an exemption of "[t]he debtor's interest in any property, not to exceed in value $400 plus up to $3,750.00 of any unused amount of the [homestead] exemption ...."

connection with the renewal was accepted without any title search on its part. The court further found that there was no misrepresentation by Bowers and that, "as part of the complete transaction, the parties also agreed that the plaintiff would not make demand for payment as permitted by the note so long as the defendant complied with the plaintiff's repayment schedule." That schedule was never prepared as the bank made demand almost immediately. Thus, the court held that "there was a failure of consideration on the part of the plaintiff as to the complete transaction, and that the plaintiff has not proved a legal basis for its complaint."

With regard to the defendant's counterclaim, the court ruled "upon the defendant's counterclaim, the judgment of the court is that defendant's mortgage to the plaintiff is hereby cancelled and declared to be null and void."

3 Conn.App. at 658–59, 491 A.2d 431. The appellate court concluded:

Since the plaintiff did not live up to its end of the bargain, it was not unreasonable for the trial court to cancel the mortgage. Although in the present case the trial court's award was unusual, it cannot be said that it was an abuse of discretion. We, therefore, conclude that the court did not err in its award on the defendant's counterclaim.

There is no dispute, however, as to the validity of the note in the principal amount of $40,000 due by the defendant thereunder. Consequently, the court erred in failing to render judgment for the plaintiff on the note in that amount.

*Id.* at 660–61, 491 A.2d 431. On June 7, 1985, the Connecticut Supreme Court denied the debtor's petition for certification to appeal from the appellate court.

■ The debtor claims that the appellate court was patently wrong in declaring the $40,000 replacement note valid. She requests this court "to exercise its equitable powers and determine for itself the merits of this matter." *Debtor's memorandum* at 4. She cites *Pepper v. Litton*, 308 U.S.

295, 308, 60 S.Ct. 238, 246, 84 L.Ed. 281 (1939), for the proposition that the bankruptcy court has "the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt[cy] estate."

The debtor's position on this issue is meritless. The doctrine of res judicata bars reconsideration of the validity of the note. "[A] judgment on the merits in a prior suit bars a second suit involving the same parties ... based on the same cause of action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). This principle applies in bankruptcy courts.

[W]e are aware of no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of res judicata, which is founded upon the generally recognized public policy that there must be some end to litigation and that when one appears in court to present his case, is fully heard, and the contested issue is decided against him, he may not later renew the litigation in another court.

*Heiser v. Woodruff*, 327 U.S. 726, 733, 66 S.Ct. 853, 856, 90 L.Ed. 970 (1946); *cf. Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) (bankruptcy court may refuse to apply doctrine of res judicata when issue of dischargeability was not previously considered). The debtor, having been fully heard by the Connecticut courts, may not, by reason of a chapter 13 filing, relitigate her differences with CNB. The state-court proceedings between the debtor and CNB did not involve any scheme to defraud creditors and did not implicate any principles of bankruptcy law or administration. The doctrine of *Pepper v. Litton* does not apply in the present matter.

### B.

■ The debtor next contends that if the CNB claim is found valid, she is entitled to assert exemption rights in the garnisheed funds. Although as previously recited, the debtor did not assert an exemption in these

monies in her schedules, it is apparent from the provisions in her plan and the § 522(f) motion that she inadvertently failed to amend her schedules to claim this exemption. The court will treat the schedules as if properly amended.

■ The right of a debtor utilizing chapter 13 to claim exemption benefits seems, at first sight, anomalous. "The historical purpose of exemptions ... is to protect a debtor from creditors by permitting him to retain the basic necessities of life so that after his creditors have levied on or received all nonexempt property, the debtor will not be left destitute and a public charge." *Warren v. Taff (In re Taff)*, 10 Bankr. 101, 106 (Bankr.D.Conn.1981). In a chapter 13 case, however, a debtor normally retains all her property in return for her voluntarily using her future earnings to pay creditors at least what each creditor would have received if the debtor's estate were liquidated under chapter 7.[3] CNB contends that the only use of the Bankruptcy Code exemption provisions is to determine whether each creditor is so treated in a confirmed chapter 13 plan and that the provisions of § 522(f) are not available to a chapter 13 debtor. A few early bankruptcy court decisions so held, finding § 522(f) inconsistent with chapter 13. *Morgan v. Household Fin. Corp. (In re Morgan)*, 18 Bankr. 17 (Bankr.D.Del.1981); *Aycock v. Heritage Bank (In re Aycock)*, 15 Bankr. 728 (Bankr.E.D.N.C.1981).

The overwhelming majority of courts, which this court now joins, have permitted chapter 13 debtors to utilize § 522(f). *Hall v. Finance One of Ga., Inc. (In re Hall)*, 752 F.2d 582 (11th Cir.1985), and cases cited therein; *Transouth Fin. Corp. v. Paris*, 26 Bankr. 184 (W.D.Tenn.1982); *Baldwin v. Avco Fin. Serv.*, 22 Bankr. 507 (D.Del.1982); *Anderson v. Dayton Plumbing Supply Co. (In re Anderson)*, 57 Bankr. 953 (Bankr.S.D.Ohio 1986). Chapter 13 debtors who have paid their judicial lien creditors at least what they would have received in chapter 7 would be unfairly discriminated against if they could not avoid such judicial liens. In effect, debtors in chapter 13 cases are not claiming exemptions. They are claiming the benefit of avoiding judicial liens as if they had claimed exemptions as chapter 7 debtors. *Hall v. Finance One of Ga., Inc., supra*, at 590; *Baldwin v. Avco Fin. Serv., supra*, at 509–10; *Blake v. Ledan (In re Blake)*, 38 Bankr. 604, 607–08 (Bankr.E.D.N.Y.1984).

■ This conclusion does not mean that the debtor may take advantage of the benefits of § 522(f) at this stage of her case. Her chapter 13 plan has not been confirmed, let alone consummated. Chapter 13 is a purely voluntary chapter, and a debtor unilaterally may dismiss the case at any time. A creditor's judicial lien, accordingly, should be avoidable under § 522(f) only after the creditor has received what it is entitled to under a confirmed plan.

### III.

■ In view of the foregoing, I hold that CNB is currently entitled to that portion of the monies originally deposited in escrow with debtor's counsel that exceeds $4,050.00, plus applicable interest. The balance of monies shall remain in escrow pending further order of this court. It is

SO ORDERED.

---

**3.** *11 U.S.C. § 1306(b)*. "Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate."

*11 U.S.C. § 1325(a)*. "... the court shall confirm a plan if—

(4) The value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date ...."