## Florence BOWERS

v.

## CONNECTICUT NATIONAL BANK.

### Civ. No. H–87–163(AHN).

United States District Court,
D. Connecticut.

Sept. 29, 1987.

Richard Liebert, Hunt & Liebert, Hartford, Conn., for appellant.

Thomas Boscarino, Berman, Sable & Boatman, Hartford, Conn., for appellee.

## RULING ON BANKRUPTCY COURT APPEAL

NEVAS, District Judge.

This case presents the question whether a federal bankruptcy court was in error in according preclusive effect to a state appellate court's finding on the validity of a promissory note. The issue has been extensively briefed and orally argued by the parties. For the following reasons, the judgment of the bankruptcy court 69 B.R. 822, is reversed and the case remanded to that court for further determinations consistent with this ruling.

### Background

On November 1, 1978, Florence Bowers executed an unsecured promissory note for $50,000 in favor of the Hartford National Bank, the predecessor to the Connecticut National Bank ("CNB"). On April 23, 1980, Bowers executed a renewal demand note for $40,000, the balance due on the original note, again in favor of CNB. The replacement note was secured by a mort-

gage on Bowers's home. During negotiations prior to the execution of the 1980 note, CNB agreed to implement an installment payment schedule; the bank also agreed not to call the note if Bowers stayed current on these periodic payments. About eight days after the renewal note was executed, CNB made demand for full payment. Bowers was not able to meet this demand and, on September 8, 1980, CNB sued in state court to foreclose the mortgage.

## I. *Connecticut Superior Court Proceedings*

In addition to the $40,000 principal, CNB sought interest, attorneys' fees, and costs. The bank alleged that the mortgage in question was third in line behind two other mortgages on the same property. In her substituted counterclaim Bowers alleged that CNB fraudulently induced her to execute the third mortgage and breached its oral promise not to call the note if installments were timely paid. She sought restitution of the mortgage or cancellation of the instrument and damages.

After a two-day court trial in February 1983, before Judge Julius Kremski of the superior court in Hartford, the court held that "the parties entered into a valid agreement to modify the renewed demand note which permitted periodic payment on a scheduled basis.... [CNB] failed to carry out its part of this agreement." Memorandum of Decision, October 4, 1983, at 6. Moreover, "there was a failure of consideration on the part of [CNB] as to the complete transaction, and ... [CNB] has not proved a legal basis for its complaint." *Id.* at 6–7. The court entered judgment for Bowers on CNB's complaint. *Id.* at 7. As to the counterclaim, the court held that

the renewal note, the mortgage and the agreement to set out a repayment schedule were all one transaction; that [CNB] was to provide to [Bowers] the schedule of payments, and the demand by [CNB] for full payment of the renewal note invalidated the complete transaction.

....

[U]pon [Bowers's] counterclaim, the judgment of the court is that [her] mortgage to [CNB] is hereby cancelled and declared to be null and void.

*Id.* at 7. CNB appealed from the judgment of the superior court.

## II. *Connecticut Appellate Court Proceedings*

On appeal, CNB argued, among other things, that (1) the trial court had erred in denying its claim for foreclosure because of a failure of consideration; and (2) the relief ordered by the superior court was inequitable and excessive. *Hartford National Bank & Trust Co. v. Bowers,* 3 Conn.App. 656, 657–58, 491 A.2d 431, 432 (1985). The appellate court held that the trial court was within its discretion in precluding foreclosure of the mortgage for Bowers's failure to pay the balance of the $40,000 demand note. *Id.* at 660, 491 A.2d at 433. As the court concluded:

Since the plaintiff did not live up to its end of the bargain, it was not unreasonable for the trial court to cancel the mortgage. Although in the present case the trial court's award was unusual, it cannot be said that it was an abuse of discretion. We, therefore, conclude that the court did not err in its award on the defendant's counterclaim.

There is no dispute, however, as to the validity of the note in the principal amount of $40,000 due by the defendant thereunder. Consequently, the court erred in failing to render judgment for the plaintiff on the note in that amount.

*Id.* at 660–61, 491 A.2d at 433. The court remanded to the trial court and directed it to render judgment for CNB as to the principal amount due on the note and for further proceedings as to any interest, costs, and attorneys' fees also due. *Id.* at 661, 491 A.2d at 433.

On June 7, 1985, the Connecticut Supreme Court denied Bowers's petition for certiorari. *Hartford National Bank & Trust Co. v. Bowers,* 196 Conn. 810, 494 A.2d 906 (1985).[1]

---

1. Under Connecticut law, the denial of certiora-  ri by the supreme court does not necessarily

III. *Bankruptcy Court Proceedings*

Before any further trial court proceedings could take place, Bowers filed a chapter 13 petition, on October 3, 1985, in the United States Bankruptcy Court for the District of Connecticut. CNB filed a claim in the amount of $70,912.42, based on the principal and interest due on the 1980 note. On October 14, 1986, CNB initiated adversarial proceedings seeking the release of certain of Bowers's funds that had been garnished prepetition. Bowers objected, arguing that she was not indebted to CNB because the 1980 note was induced by fraud and was therefore invalid. Bowers argued that the Connecticut Appellate Court was wrong in holding that the $40,000 renewal note was valid. She requested that the bankruptcy court exercise its equitable powers and make its own findings as to the validity of the note.

Chief Bankruptcy Judge Robert Krechevsky held that "[t]he debtor's position on this issue is meritless. The doctrine of res judicata bars reconsideration of the validity of the note" because a final judgment existed on this question. Memorandum of Decision Re: Application of Connecticut National Bank for Partial Payment of Secured Claim ("Bankruptcy Court Memorandum of Decision"), dated February 4, 1987, at 825. As to exercise of its equitable powers, the court stated:

The debtor, having been fully heard by the Connecticut courts, may not, by reason of a chapter 13 filing, relitigate her differences with CNB. The state-court proceedings between the debtor and CNB did not involve any scheme to defraud creditors and did not implicate any principles of bankruptcy law or administration.

*Id.* The court then ruled that CNB was entitled to a portion of the garnished funds as partial satisfaction of its secured claim. *Id.* at 826.

On February 13, 1987, Bowers applied to the bankruptcy court under 28 U.S.C. Section 158(a) [2] for leave to appeal to the United States District Court for the District of Connecticut. Leave was granted, and this appeal followed.

*Discussion*

I. *Full Faith and Credit*

■ 28 U.S.C. Section 1738 provides in pertinent part that:

The records and judicial proceedings of any court of any ... State ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State....

This provision requires that a federal court give the same preclusive effect to a state court judgment "as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). *Accord Allen v. McCurry,* 449 U.S. 90, 95–96, 101 S.Ct. 411, 415–16, 66 L.Ed.2d 308 (1980). The full faith and credit mandate of section 1738 also applies to federal bankruptcy courts. *In re Farrell,* 27 B.R. 241, 243 (Bankr.E.D. N.Y.1982).

In *Kelleran v. Andrijevic,* 825 F.2d 692 (2d Cir.1987), the Court of Appeals for the

---

indicate that court's approval of either the result reached or the opinion rendered by a lower court. *State v. Cullum,* 149 Conn. 728, 730, 176 A.2d 587, 588 (1961) (per curiam). *See also State v. Chisholm,* 155 Conn. 706, 706–07, 236 A.2d 465, 465–66 (1967) (per curiam); *Pagano v. Board of Education of City of Torrington,* 4 Conn.App. 1, 5–6, 492 A.2d 197, 200, *cert. denied,* 197 Conn. 809, 499 A.2d 60 (1985). The role of the court on a petition for certiorari is limited to "determin[ing] whether the petition raises a substantial question which should be considered by us in the interests of justice to the particular litigants or in the interests of preserving a stable, sound and consistent body of case law in

the state." *Cullum,* 149 Conn. at 730, 176 A.2d at 588.

**2.** 28 U.S.C. Section 158(a) states in full:

The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

Second Circuit was recently faced with the question whether a federal bankruptcy court must give preclusive effect to a default judgment obtained in a New York state court. The bankruptcy court refused to give the default judgment preclusive effect, and this ruling was affirmed by a United States district court. *Id.* at 694. The court of appeals reversed, holding that federal law required the bankruptcy court to recognize the validity of the default judgment because New York law recognizes the preclusive effect of such judgments. *Id.* at 694. The court noted, however, that a bankruptcy court could forego the preclusive effect of a state court's judgment if either of two exceptions existed. *Id.* at 694–95. The preclusive effect may be ignored "where the judgment was procured by collusion or fraud, *Margolis v. Nazareth Fair Grounds & Farmers Market,* 249 F.2d 221, 223–25 (2d Cir.1957), or where the rendering court lacked jurisdiction, *Heiser v. Woodruff,* 327 U.S. 726, 736, 66 S.Ct. 853, 857–58, 90 L.Ed. 970 (1946)." *Kelleran,* slip op. at 694–95. Because the defaulting litigant had conceded that neither of the "only established exceptions" applied to his case, the court of appeals declined to alter the rule that "bankruptcy courts respect lawfully obtained state court judgments." *Id.* at 695. As the court concluded:

> While the record strongly suggests that the merits of [the] claims are doubtful, Andrijevic should have attacked these claims in the state court. Bankruptcy proceedings may not be used to re-litigate issues already resolved in a court of competent jurisdiction. *Teachers Insurance & Annuity Association of America v. Butler,* 803 F.2d 61, 66 (2d Cir. 1986). The courts below erred in refusing to give preclusive effect to the state court judgment.

*Kelleran,* at 695.

In the instant case, the bankruptcy court gave preclusive effect to the state appellate court's determination that no dispute surrounded the validity of the $40,000 promissory note. Bankruptcy Court Memorandum of Decision at 825. As *Kelleran* instructs, the bankruptcy court properly accorded this deference if Connecticut state courts would also give preclusive effect to the appellate court's ruling. There is no mention in the bankruptcy court's memorandum of decision that it considered Connecticut law on this matter.[3]

The law in Connecticut is well established that a decision by an appellate court

> does not make res adjudicata any issue of fact involved in it; it is the judgment of the tribunal from which an appeal is taken which, if affirmed by us or rendered in conformity to a decision we make, conclusively determines any such issues.

*Osterlund v. State,* 135 Conn. 498, 502, 66 A.2d 363, 366 (1949). *Accord Laurel, Inc. v. Commissioner of Transportation,* 180 Conn. 11, 23, 428 A.2d 789, 795 (1980); *Pepin v. Danbury,* 171 Conn. 74, 80, 368 A.2d 88, 93 (1976). Thus, preclusion arises only when an appellate court affirms the factual findings of a trial court or when the trial court's judgment is rendered in conformity to a decision made by the appellate court. It follows then that an appellate court's finding of error has no effect for res judicata or collateral estoppel purposes.

The question narrows to whether the state appellate court's finding that the 1980 note was valid affirmed a similar finding by the superior court. If such affirmation exists, the bankruptcy court was correct in giving preclusive effect to the appellate

---

**3.** In *In re Novak,* 37 B.R. 31 (Bankr.D.Conn. 1983), the bankruptcy court was faced with the issue of whether to give preclusive effect to a Connecticut state-court default judgment. The bankruptcy court began its analysis by deciding that Connecticut law recognizes a default judgment as a final one. *Id.* at 32–33 (citing *Slattery v. Maykut,* 176 Conn. 147, 157, 405 A.2d 76, 82 (1978)). The court then noted that "[e]xcept where elements such as fraud and collusion exist ..., bankruptcy courts are required to give res judicata effect to state-court judgments." *Id.* at 33 (citing *Heiser,* 327 U.S. at 733, 737, 66 S.Ct. at 856, 858). The *Novak* court recognized that before preclusive effect can be accorded a state-court judgment, the reviewing court must initially determine whether the state proceedings constitute a final judgment under state law.

court's ruling on this issue. If the trial court did not establish the note's validity, then, under Connecticut law, the bankruptcy court was in error in deferring to the appellate court's determination of this issue. This court must now examine the superior court's treatment of the promissory note in question.

## II. *The Superior Court Proceedings*
### A. *The Pleadings*

█ In its complaint, CNB alleged that Bowers had secured the $40,000 promissory note by mortgaging two parcels of property located in Burlington, Connecticut. The complaint seeks foreclosure of the mortgage for non-payment on the note; immediate possession of the mortgage premises, attorneys' fees and costs; damages; and a deficiency judgment. Notably, the complaint does not contain a prayer for relief as to the promissory note. In her answer, dated November 6, 1980, Bowers denied that she owed any debt to CNB. In her substituted counterclaim, dated March 31, 1983,[4] she alleged that the bank's fraudulent promises and representations had induced her to execute a third mortgage on her property. She sought money damages and either restitution or cancellation of the mortgage. The counterclaim is silent as to any relief sought on the promissory note. It would appear from the pleadings that the parties did not place the validity of the note in question in the foreclosure suit brought by CNB.

Connecticut law does not require that the validity of an underlying note be addressed in a foreclosure suit:

'A note and a mortgage given to secure it are separate instruments, executed for different purposes and in this state action for foreclosure of the mortgage and upon the note are regarded and treated, in practice, as separate and distinct causes of action, although both may be pursued in a foreclosure suit. [citations omitted.]'

*Little v. United Investors Corp.*, 157 Conn. 44, 48, 245 A.2d 567, 568 (1968). *See also First Bank v. Simpson*, 199 Conn. 368, 372, 507 A.2d 997, 999 (1986). It follows, therefore, that a finding as to the enforceability of a mortgage does not in any manner predetermine the validity of a note. Moreover, even if the validity of a note is pursued in a foreclosure suit, the trial court must make separate and distinct findings as to the note.

### B. *Memorandum of Decision*

The court concluded that the evidence presented at trial strongly indicated that CNB had orally promised not to make demand for payment—though permitted to do so by the terms of the note—if Bowers complied with CNB's repayment schedule. Memorandum of Decision at 6. According to the court, CNB's breach of this agreement produced "a failure of consideration on the part of [CNB] as to the *complete transaction....*" *Id.* at 6–7 (emphasis added). The court also found that "the renewal note, the mortgage and the agreement to set out a repayment schedule were all *one transaction* ... and the demand by [CNB] for full payment of the renewal note *invalidated the complete transaction.*" *Id.* at 7 (emphasis added). This language seems to indicate that the trial court invalidated the note along with the mortgage. The court does not ascribe fraud as the basis for this conclusion, however, as Bowers argues; rather, it attributes the apparent invalidation to "failure of consideration."

When it entered judgment in the case, though, the court retreated from this broad position. After finding for Bowers on both the complaint and the counterclaim, the court entered judgment for her on the complaint and voided the mortgage on the counterclaim. *Id.* As previously noted, the relief requested in the complaint and counterclaim was limited to the mortgage only. Thus, in fashioning his judgment, Judge Kremski granted relief that was con-

---

**4.** After the trial was completed, the court granted Bowers permission to amend her counterclaim so as to conform to the proof elicited at trial. The absence of a claim as to the note in the substituted counterclaim adds emphasis to the conclusion that the note's validity was not an issue before the superior court.

sistent with the four corners of the pleadings. The scope of the trial court's judgment was in keeping with established Connecticut law:

> It is fundamental in our law that the right of a plaintiff [or a counterclaimant] to recover is limited to the allegations of his complaint [or counterclaim]. [citation omitted.] A [party] may not allege one cause of action and recover upon another. Facts found but not averred cannot be made the basis for a recovery. [citations omitted.]

*Malone v. Steinberg,* 138 Conn. 718, 721, 89 A.2d 213, 214–15 (1952). Furthermore, "any judgment should conform to the pleadings, the issues and the prayers for relief." *Kawasaki Kisen Kaisha, Ltd. v. Indomar, Ltd.,* 173 Conn. 269, 272–73, 377 A.2d 316, 318 (1977). *Accord Matthews v. F.M.C. Corp.,* 190 Conn. 700, 705, 462 A.2d 376, 378 (1983).[5]

Because the trial court made no specific findings, or at best ambiguous findings, as to the validity of the note, no preclusive effect could arise from the appellate court's finding that the validity of the instrument was not in dispute.[6] And because this appellate finding lacked proscrip-

tive force under Connecticut law, it was clearly erroneous for the bankruptcy court to imbue it with full faith and credit on the question of the note's validity.

### III. *The Bankruptcy Court's Equity Powers*

A bankruptcy court acts essentially as a court of equity. *Local Loan Co. v. Hunt,* 292 U.S. 234, 240, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1934); *In re Leasing Consultants Inc.,* 592 F.2d 103, 107 (2d Cir.1979). "There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction." *Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966). Among a bankruptcy court's broad equitable powers is "the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate." *Pepper v. Litton,* 308 U.S. 295, 307–08, 60 S.Ct. 238, 246, 84 L.Ed. 281 (1939). It has long been a basic function of bankruptcy courts to determine the validity of creditors' claims. *Farrell,* 27 B.R. at 245. *See also* 11 U.S.C. Section 502.

---

**5.** A recent case, with facts partially analogous to the instant one, underscores this point. In *Gordon v. Tufano,* 188 Conn. 477, 482, 450 A.2d 852, 854 (1982), the supreme court held that in an action to discharge a mortgage and a lis pendens, the trial court lacked jurisdiction to determine the validity of the underlying note because that issue was not raised in the pleadings.

**6.** At the court's request, the parties submitted, and made a part of this record, the transcripts of the trial heard by Judge Kremski on February 10 and 15, 1983. Though the testimony elicited from various witnesses sheds light on the circumstances surrounding execution of the note, the transcripts are inconclusive on the matter of the note's validity. The court refers to the parties' business dealings on the mortgage and renewal note as "pretty much tied up with one another," but it does not make specific reference to the note. Transcript of February 15, Testimony of Donald Bowers, at 24. However, counsel for CNB and Bowers seem to separate the mortgage and the note and to indicate that the suit involved the mortgage only. The bank's attorney states that, "[W]hat's at bar in this case. It's a foreclosure of a forty thousand dollar mortgage." Transcript of February 10, Testimony of Ward McKenzie, at 40. And

again, "We are *only* seeking a judgment of foreclosure by a mortgage that was essentially given by Mrs. Bowers." Transcript of February 15, Testimony of Donald Bowers, at 23 (emphasis added). During final argument, Bowers's counsel states the following: "Mrs. Bowers signed that note and Mrs. Bowers got the benefit of that money and Mrs. Bowers owes Hartford National Bank that money. *Nobody argues that.* Least of all me." Transcript of February 15, Final Arguments, at 13 (emphasis added). Further,

> [i]f the court finds that this mortgage was obtained improperly ... all the plaintiff is deprived of is a mortgage. And with all due respect he ought to be deprived of a mortgage. *Not deprived of his claim; he's not deprived of his debt.* And he's not deprived of making an attachment and doing whatever else they may want to do to collect it. But what he is deprived of is what he obtained fraudulently.

*Id.* at 14 (emphasis added). Perhaps it was these admissions by Bowers's counsel that induced the appellate court to find "no dispute" as to the note's validity. *Bowers,* 3 Conn.App. at 661, 491 A.2d at 433. The fact remains, however, that the parties, and the court in fashioning its judgment, regarded the trial as involving a foreclosure only.

On remand, the bankruptcy court is ordered to conduct a hearing on the validity of the 1980 promissory note. No statutory impediment prevents the bankruptcy court from conducting its own investigation into this issue. Moreover, res judicata and collateral estoppel principles are not implicated because a final judgment has not been rendered on the note's validity. Pending the outcome of the hearing, the court is also ordered to preserve in an appropriate escrow account the sum awarded to CNB as partial payment on its claim.

*Conclusión*

For the foregoing reasons, the judgment of the bankruptcy court is reversed and the case is remanded for proceedings consistent with this ruling.