905 F.2d 716
 20 Bankr.Ct.Dec. 954
 In re NAT WARREN CONTRACTING CO., INC., Debtor.
ALEXANDER & JONES, a Virginia General Partnership, Plaintiff-Appellee,
v.
SOVRAN BANK, N.A., Defendant-Appellant,
and
Nat Warren Contracting Co., Inc., Defendant.
 No. 89-2088.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 5, 1990.
Decided April 17, 1990.
Ordered Published June 11, 1990.
 
 Ann Burke Brogan (Thomas E. Cabaniss, McGuire, Woods, Battle & Boothe, Norfolk, Va., on brief), for defendant-appellant.
 Stuart L. Nachman, Kalfus, Nachman & Stanley, Norfolk, Va., for plaintiff-appellee.
 Before PHILLIPS, SPROUSE, and WILKINS, Circuit Judges.
 WILKINS, Circuit Judge:
 
 
 1
 Sovran Bank, N.A. (Sovran) appeals from the judgment of the district court affirming the decision of the bankruptcy court in an action by Alexander & Jones to determine ownership of a checking account.[1] Because we conclude that commingling of funds rendered the account a general account, we reverse.
 
 I.
 
 2
 In March 1988 a checking account was established at Sovran in the name of Nat Warren Contracting Co., Inc. (Nat Warren). Rosa M. Alexander, a general partner in Alexander & Jones, and Dennis L. Harris, a Nat Warren employee, were the authorized signatories. The initial deposit into the account was a check in the amount of $30,000 from Alexander & Jones payable to Nat Warren. The check indicated on its face that it was a "Loan for Payroll." On March 18, 1988, Nat Warren closed another checking account it had at Sovran and transferred the remaining balance of $6,073.54 into the new account. On March 22, 1988, Nat Warren deposited a check in the amount of $4,000 that it received from Williams Corporation as payment of a debt owed to Nat Warren. On March 24, 1988, a check in the amount of $7,306.53 from Alexander & Jones was deposited into the account. A notation on the check indicated that it was a "Personal Loan."
 
 
 3
 The Sovran officer who approved the Nat Warren account testified that he was aware that Alexander & Jones loaned a portion of the funds in the account to Nat Warren to enable it to meet business expenses. Checks drawn against the account were used to pay utilities, payroll, insurance, and other miscellaneous expenses incurred in the ordinary course of business. Although many of the checks were signed by Dennis Harris, Alexander & Jones asserts that Rosa Alexander maintained constant control of the account.
 
 
 4
 On April 7, 1988, Nat Warren filed a voluntary petition in bankruptcy for reorganization under Chapter 11. See 11 U.S.C.A. Secs. 1101, et seq. (West 1979 & Supp.1989). Upon receiving notice of this filing, Sovran froze the checking account and sought to apply the funds in the account to setoff a portion of its claims against Nat Warren. See 11 U.S.C.A. Sec. 553(a) (West 1979). In response, Alexander & Jones filed a complaint in the bankruptcy court seeking to recover the funds in the account, contending that the account was a special account not subject to setoff. Sovran argued, however, that the account was a general account rather than a special account and was thus subject to setoff.
 
 
 5
 The bankruptcy court found that the account was a special account and that Sovran had knowledge of Alexander & Jones' intention to maintain the account for the purpose of paying Nat Warren's payroll. It also found that Nat Warren had not commingled other funds in the account so as to destroy its special nature. The bankruptcy court held that Sovran could not apply the balance of the account to setoff an obligation of Nat Warren and ordered Sovran to lift the freeze placed on the account. 95 B.R. 37. Sovran appealed the bankruptcy court order to the district court. The district court affirmed, finding that Sovran was aware of Alexander & Jones' interest in the account and had approved the structure of the account. It concluded that the bankruptcy court did not err in finding the account to be a special account and in ordering Sovran to lift the freeze.
 
 II.
 
 6
 Section 553(a) provides that unless otherwise excepted,[2] Title 11 (the Bankruptcy Code) "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case." 11 U.S.C.A. Sec. 553(a). "Section 553 does not create a right of setoff.... It merely preserves any right of setoff accorded by state law...." Durham v. SMI Indus. Corp., 882 F.2d 881, 883 (4th Cir.1989). Therefore, we look to Virginia law to determine whether Sovran is entitled to setoff the funds remaining in Nat Warren's checking account.
 
 
 7
 Under Virginia law, funds deposited in a general account immediately become the property of the bank and the bank becomes a debtor of the depositor. Bernardini v. Central Nat'l Bank of Richmond, 223 Va. 519, 521, 290 S.E.2d 863, 864 (1982). A bank is entitled to setoff any debt due to it against money deposited in a general account of the debtor. Id. However, when funds are deposited in a special account, "the deposit does not become the property of the bank and the right of setoff does not exist." Id. An account is a special account and thus exempt from setoff if (1) funds are deposited in the account for a special purpose and (2) the bank has notice of the special purpose of the account. Id. Funds not subject to setoff lose their exempt status, however, when they are commingled with funds that are not exempt from setoff. Id. at 522, 290 S.E.2d at 865. Absent an agreement to the contrary, an account is presumed to be a general account. Williams v. Dickenson County Bank, 175 Va. 359, 363-64, 7 S.E.2d 885, 887 (1940).
 
 III.
 
 8
 Sovran contends that even if the account was originally a special account, it lost its "specialness" when other funds were commingled with the funds provided by Alexander & Jones. We agree. When Nat Warren deposited the remaining balance from the closed account and the payment from Williams Corporation into the new account, it commingled its own funds which clearly were not exempt from setoff with the funds provided by Alexander & Jones. The bankruptcy court held that these deposits did not destroy the "specialness" of the account.[3] However, assuming that the loans from Alexander & Jones originally were deposited for a special purpose,[4] Bernardini makes clear that when Nat Warren deposited its own funds into the account, the account lost its status as a special account. Bernardini, 223 Va. at 522, 290 S.E.2d at 865. Moreover, although Alexander & Jones loaned Nat Warren a total of $37,306.53 which was deposited into the account, more than $38,000 was withdrawn from the account between the time of the loans and the time Sovran froze the account. Requiring Sovran to determine whether the funds for these withdrawals were derived from the loans from Alexander & Jones or Nat Warren's own funds "would place an impossible burden on the Commonwealth's banking system." Id. at 521, 290 S.E.2d at 864.
 
 
 9
 Alexander & Jones argues, however, that no real commingling occurred because Rosa Alexander maintained control of the account. It contends that Nat Warren deposited funds, when available, into the account to repay the loans from Alexander & Jones. However, if Nat Warren had intended to repay Alexander & Jones from these funds, the logical course would have been to pay the money directly to Alexander & Jones. Rather than doing so, the funds were deposited into the checking account and apparently used, at least in part, to meet Nat Warren's ordinary business expenses. This clearly constitutes commingling.
 
 
 10
 We conclude that because Nat Warren commingled its own funds with the funds provided by Alexander & Jones, the checking account was a general account rather than a special account. Thus, under Virginia law, Sovran was entitled to setoff the funds remaining in the account against debts owed to it by Nat Warren.
 
 REVERSED
 
 
 [1]
 The checking account was in the name of the debtor, Nat Warren Contracting Co., Inc., which disclaimed any interest in the funds remaining in the account and is not a party to this appeal
 
 
 [2]
 The parties do not contend that any of the exceptions apply
 
 
 [3]
 The district court did not address the issue of commingling
 
 
 [4]
 Because the commingling of funds destroyed any exemption from setoff the account would have had as a special account, we need not address whether the account was a special account at the time it was opened