[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
On January 1, 1991, the Governor of Rhode Island declared a banking emergency within this state in the wake of the collapse of the Rhode Island Share and Deposit Indemnity Corporation ("RISDIC"). Forty-five Rhode Island financial institutions — credit unions, banks, and loan and investment companies — all of which had been associated with RISDIC were immediately closed, including Chariho-Exeter Credit Union ("Chariho" or "the Credit Union"). Although many of the affected institutions were able to reopen with federal insurance or were acquired by a federally insured financial institution, Chariho has remained closed, and its depositors have been unable to access their accounts.
On August 22, 1991, the Credit Union was petitioned into permanent receivership pursuant to the application of the plaintiff herein. As grounds for the receivership application, the plaintiff alleged that Chariho was insolvent, that its condition was such as to render continuance of its business hazardous to the public or to those having funds in its custody, and that it had failed to maintain adequate deposit insurance. No objection was lodged to the receivership application, and none of these grounds for the application was disputed. Chariho itself consented to the receivership petition, in part because First Bank and Trust Company ("First Bank"), a federally insured bank, was expected to acquire the Credit Union.
No potential acquirer other than First Bank has expressed serious interest in Chariho's acquisition. After protracted delays attributable to various federal regulatory and other financial investigations as well as to negotiations with the Rhode Island Depositors Economic Protection Corporation ("DEPCO"), a proposed Acquisition Agreement with First Bank and a proposed Receiver/DEPCO Agreement have been placed before the Court for approval.
The proposed agreements contemplate that First Bank will assume responsibility for almost all of the depositors' accounts, such as demand, savings, passbook, money market, and time deposits. First Bank's assumption of those accounts will generally provide thousands of Chariho depositors with full access to the funds posted to their accounts at the time the Credit Union closed, with interest to the initial date of receivership.
Not every such account, however, is to be assumed by First Bank. Excluded are so-called "Retained Accounts," which are accounts held by Chariho officers and directors, against whom the receiver has claims, as well as accounts of depositors who are in default of loans or other obligations to Chariho or to any of the other "failed institutions".[1] These accounts are to be retained by the receiver and their allowance deferred pending adjudication of the receiver's claims against those individuals.
At a March 4, 1992 hearing, this Court generally approved the Acquisition Agreement with First Bank but withheld final approval pending resolution of challenges by several depositor/directors ("the directors"), who objected to the above-described Retained Accounts provisions. (The proposed Receiver/DEPCO Agreement, which was presented to the Court subsequent to the March 4 hearing, also reflects provisions relating to the Retained Accounts.) A further hearing was held on March 27 following submission of memoranda by the parties. The Court has also received amicus curiae memoranda on behalf of the directors of Greater Providence Deposit and Trust Corporation and from the American Civil Liberties Union.
Central to the directors' objections is their contention that the Retained Accounts provisions amount to an unconstitutional taking of their property and an improper pre-judgment attachment of their assets without the benefit of a due process hearing. They further complain that the retention of their accounts, while allowing the accounts of all the other depositors to pass to First Bank, constitutes unequal and impermissible treatment under the 1991 receivership statute enacted as a result of this banking crisis. The Court disagrees.
The primary function of a court overseeing receivership proceedings is to ensure that the receiver manages, preserves, and maximizes the value of the assets of the receivership estate for the benefit of all the affected parties. Brill v. CitizensTrust Co., 492 A.2d 1215, 1217 (1985). See generally, 16Fletcher Cyclopedia Corporations § 7810 (Perm. ed.) at 465. The Chariho receiver has by statute been vested with all right, title, and interest in the Credit Union and its property and effects. Further, the receiver has been statutorily granted the authority to sell, convey, and dispose of all or any portion of the Credit Union's assets, and "to do all other acts . . . that may be necessary for the administration of his trust according to the course of equity." §§ 7-1.1-91(d), 19-15-2, R.I.G.L. It is the view here that inclusion of the Retained Accounts provisions is fully consistent with that statutory charge.
The directors cannot characterize the funds in their Chariho accounts as "their property" which is being "taken" by application of the Retained Accounts provisions. By clear authority those funds are not now, nor were they prior to the receivership proceedings, their property after the funds had been deposited in their accounts. Such deposits became the property of the institution, the deposit transaction having created a debtor-creditor relationship between the bank and the depositor.Westerly Community Credit Union v. Industrial National Bank ofProvidence, 103 R.I. 662, 668, 240 A.2d 586, 589 (R.I. 1968). As our Supreme Court said in the Westerly case:
 On an ordinary general deposit, the law considers the currency so deposited to be the property of the depository bank; quite naturally, therefore, the bank is regarded by law to have legal title to the deposited funds and is considered to be indebted to the depositor for such sums. 103 R.I. at 668, 240 A.2d at 589-90.
Accord, In re Nat Warren Contracting Co., Inc., 905 F.2d 716, 718 (4th Cir. 1990) ("[F]unds deposited in a general account immediately become the property of the bank, and the bank becomes a debtor of the depositor." [Construing state law]); 3 Clark,Law of Receivers § 662.2 (3d ed. 1959) at 1179 ("Money deposited in a bank . . . does not remain the property of the depositor. It becomes the property of the bank and the bank becomes a debtor to the depositor in an equal amount.") What thereafter devolves to the depositor and what he retains after making a deposit is a chose in action, or a right of claim against the bank. See, United States v. Central Bank ofDenver, 843 F.2d 1300, 1304-1305 (10th Cir. 1988).
Upon placement of the institution into receivership its property is considered in custodia legis, to be managed and administered by the receiver in the manner described above.Manchester v. Manchester, 94 R.I. 400, 404, 181 A.2d 235, 238 (R.I. 1962). 2 Clark, Law of Receivers, supra, § 375 at 628 ("The order of appointment of a receiver is in the nature of a sequestration rather than an attachment. The property received by the receiver is held by the receiver in custodia legis . . ."). See generally, 16 Fletcher, supra, § 7773 at 344.
Consequently, the appointment of the receiver "suspends the right" of a depositor to exercise his right of claim, or chose in action, against the institution. 16 Fletcher, supra, § 7785 at 388. The depositor's interest thus effectively becomes a claim against the receivership estate, which may be allowed or disallowed. To be sure, depositors' claims in these multiple receivership proceedings have been statutorily granted priority status, but they are claims nonetheless.[2] They are subject to examination as well as to objection by the receiver, as are all claims, whether secured on unsecured, in any receivership proceeding. Further, as is more fully set forth below, claims of directors, officers, or shareholders of an insolvent institution are susceptible to heightened scrutiny and even dissimilar treatment.
These directors are depositor-claimants, and they have asserted their claims against the receivership estate. Through the Retained Accounts provisions the receiver has, in effect, objected to their claims. Application of the Retained Accounts provisions, however, does not dispossess the directors of those claims. They remain extant, pending their allowance or disallowance, upon adjudication of the receiver's claims against the directors.[3]
Distilled to its essence, the receiver presently seeks to postpone treatment of the directors' claims while pursuing what he perceives are substantial claims against these directors in a Superior Court civil action alleging breach of their fiduciary duty and a variety of other allegedly negligent acts in their capacities as directors/officers of Chariho. The receiver does not now seek to disallow the directors' claims. He seeks only to defer treatment on them until his claims against them have been resolved. If his allegations prove to be unfounded, the directors' claims will be fully allowed, together with interest accrued.
The receiver's approach is not at all novel. Significant authority exists both in the federal bankruptcy arena as well as in state receivership proceedings which, in a variety of contexts, recognizes the court's inherent equitable authority which the receiver has invoked in support of his position.Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); Heiser v. Woodruff, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1946) Benjamin v. Diamond (Matter of Mobile SteelCo.), 563 F.2d 692 (5th Cir. 1977); In re American Lumber Co.v. First National Bank of St. Paul, 5 B.R. 470, 478 (D. Minn. (1980); Cheney v. Johnson, 11 P.2d 709, 713 (Kan. 1932);Johnston v. Tallman, 57 P.2d 26, 28 (Kan. 1936); Mulligan v.Emmett State Bank, 261 P. 567 (Kan. 1927); Elliot v. Farmers'Bank, 57 S.E. 242 (W. Va. 1907).
Where the claimant's conduct "may be tainted with some degree of fraud, deceit, or other objectionable practice," the claim should neither be allowed outright, nor should it be summarily disallowed. 3A Collier on Bankruptcy § 63.08 (14th ed. 1975) (emph. added). As explained in that commentary:
 The compromise as worked out by judicial practice is a mode of relative disallowance, the judge-made counterpart to the priorities provided by the Act, and is usually called "postponement" or "subordination." It is one of the valuable contributions of equity to the body of statutory bankruptcy law. Id.[4]
The directors' further argument — that they are being impermissibly and inequitably singled out by the Receiver — is untenable. Such heightened scrutiny of these claimants is warranted precisely because of their fiduciary positions as directors of Chariho. In Pepper v. Litton, supra, Mr. Justice Douglas particularly noted the court's inherent equitable authority to treat disparately and less equally the claims of directors, officers, and shareholders in insolvency proceedings in order to insure that "substantial justice" would not be thwarted:
 The mere fact that an officer, director, or stockholder has a claim against his bankrupt corporation or that he has reduced that claim to judgment does not mean that the bankruptcy court must accord it pari passu treatment with the claims of other creditors. Its disallowance or subordination may be necessitated by certain cardinal principles of equity jurisprudence . . . Their dealings with the corporation are subjected to rigorous scrutiny . . . 84 L.Ed. at 289.
In Washburn v. Green, 133 U.S. 30, 43, 10 S.Ct. 280, 284, 33 L.Ed. 516, 522 (1890), the Supreme Court said, "[W]e must examine the conduct of fiduciary-claimants with a large measure of watchful care." See, Twin-Lick Oil Co. v. Marbury, 91 U.S. 587, 590, 23 L.Ed. 328, 330 (1875) (a director's acts are "subject to more severe scrutiny, and their validity determined by more rigid principles of morality, and freedom from motives of selfishness."); DeMet v. Harralson, 399 F.2d 35, 39 (5th Cir. 1968) ("special scrutiny").
Further, it has been expressly held that postponing such claims pending final adjudication is not inappropriate. In Stateex rel. Davis v. Banking House of A. Castetter, 218 S.W. 584, 586 (Neb. 1928), the Nebraska Supreme Court upheld the lower court's invocation of its "equity power to prevent payment of the deposits until the liability of the depositor as a stockholdercould be determined." (Emph. added.) See, New York StockExchange v. Pickard Co., Inc., 296 A.2d 143, 149 (Del. Ch. 1972) ("courts subject the claims of directors to careful scrutiny and insist that their bona fides be conclusively
established." Emph. added.); see, Heiser v. Woodruff, supra,
where the United States Supreme Court readily acknowledged that a bankruptcy court had the inherent equitable power to set aside fraudulent claims, even though the central issue of fraud had not yet been adjudicated. 90 L.Ed. at 975-76.
* * * *
In all, the Court finds that the Retained Accounts provisions are entirely consonant with established equitable principles attendant to receivership and insolvency proceedings. For all of the reasons set forth herein, the objections of the directors are disallowed and overruled. The receiver's applications and the proposed agreements by and between the receiver, DEPCO, and First Bank are hereby approved.[5]
[1] The "failed institutions" include Chariho Exeter Credit Union, East Providence Credit Union, Providence Teachers Credit Union, Columbian Credit Union, Greater Providence Deposit Corporation, Greater Providence Trust Company, Community Loan 
Investment Bank, Davisville Credit Union, Central Credit Union, Rhode Island Central Credit Union, Blackstone Valley Credit Union, Marquette Credit Union, Banner Loan and Investment, and Brown University Employees' Credit Union.
[2] The 1991 Amendments to the receivership statute provide the depositors of the closed institutions with the status of priority claimants. § 19-15-7(a)(3), R.I.G.L. Such priority claimants are relieved of the necessity of filing claims with the receiver, and their claims are thus deemed to have been filed. § 19-15-8(a), R.I.G.L.
[3] Even if the interim deferral of the directors' claims could somehow be deemed a "taking of their property" — and, clearly, within this receivership context it is not — such adjudication substantially lessens, and indeed ultimately eliminates, the risk of "erroneous deprivation", upon which the Supreme Court focused attention in Connecticut v. Doehr, 111 S.Ct. 2105 (1991). Moreover, the directors' concerns that such adjudication will consume several years is unfounded. All of these credit union cases are expected to be administered by a single judge and may be accorded expedited treatment.
[4] See, In re American Lumber Co. v. First National Bank ofSt. Paul, 5 B.R. 470, 478 (D.Minn. 1980) ("Bankruptcy courts are traditionally courts of equity, and their equitable powers of subordination were not eliminated by the enactment of Rule 37, R.Bky.P., in 1976. In the Matter of Mobile Steel Co., 563 F.2d 692, 699 (5th Cir. 1977). Indeed, by enacting section 510(c) of the Bankruptcy Reform Act, effective October 1, 1979, 11 U.S.C. § 510(c), Congress expressly reaffirmed the power of equitable subordination.").
[5] Having rejected the directors' objections to the Retained Accounts provisions, the Court need not at this stage reach or determine the merits of their challenges to the Complaint which encompasses the claims which have been filed against them. The merits of that Complaint and any defenses thereto will be adequately tested during the course of that litigation. This much is clear, however: The receiver's options are not, as the directors suggest, limited to withholding distributions to or asserting claims against defaulting borrowers or knowledgeable "insiders" who withdrew their deposits to avoid loss or access to their funds. §§ 19-15-7(b)(1); — 7(d), R.I.G.L. Such a restricted view ignores the receiver's statutory authority to undertake all steps necessary to administer the receivership estate, including exercising his authority to commence suits, §§ 19-15-2; 7-1.1-91(d), R.I.G.L.; Evans v. Pease, 21 R.I. 187, 42 A. 506
(R.I. 1899); as well as civil actions to enforce directors' and officers' liabilities to the insolvent institution on grounds of negligence and breach of fiduciary duty. 19 C.J.S. Corporations § 789; 3A Fletcher Cyclopedia Corporations § 1277 (Perm. ed.) at 591; 3 Clark, Law of Receivers § 796 (3d ed. 1959) at 1445;Ballantine on Corporations, § 72a at 186 (1946 ed.).