**In re HERBY'S FOODS, INC. d/b/a Fast 'N Hot also d/b/a Chuckwagon Food Services, Inc. (included by merger), Debtor.**

**HERBY'S FOODS, INC. d/b/a Fast 'N Hot also d/b/a Chuckwagon Food Services, Inc. (included by merger),**

v.

**SUMMIT COFFEE COMPANY, INC., Dunnam–Snyder Company, and the Snyder Company, Inc.**

**Bankruptcy No. 389–35669–SAF–11. Adv. No. 390–3697.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Sept. 6, 1991.

Order Denying Motion to Amend or Make Additional Findings of Fact and to Alter or Amend the Judgment on Nov. 22, 1991.

208

Lynnette R. McClellan, Gregory G. Hesse, Jenkens & Gilchrist, P.C., Dallas, Tex., for the Official Unsecured Creditors' Committee of Herby's Foods, Inc., debtor.

Dennis Olson, Godwin, Carlton & Maxwell, P.C., Dallas, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

STEVEN A. FELSENTHAL, Bankruptcy Judge.

The Official Unsecured Creditors' Committee of Herby's Foods, Inc., the debtor, requests that the court subordinate the claims of Summit Coffee Company, Inc., Dunnam–Snyder Company and the Snyder Company, Inc., the claimants, and avoid the liens of Summit and Dunnam. Neither Summit nor Dunnam has asserted its lien position in these proceedings. This opinion addresses whether the claims of Summit, Dunnam and Snyder should be subordinated under 11 U.S.C. § 510(c).

Although written in narrative form, this memorandum opinion contains the court's findings of fact and conclusions of law required by Bankruptcy Rule 7052. This court has jurisdiction to enter a final judgment in this core matter. 28 U.S.C. § 157(b)(2)(A), (B), (H) and (K) and 28 U.S.C. § 1334.

## I. Facts

Herby's Foods, Inc. produced and distributed ready-to-eat food products including fresh sandwiches, specialty entrees, snacks and beverages. The company, founded in 1948 by Mr. Herby Ballew, had been family owned and operated for more than twenty-five years. But since its sale by the Ballew family in 1975, Herby's has been the subject of several transfers of control, precipitating this proceeding.

On October 26, 1987, Summit purchased the stock of Herby's from Campbell–Taggert, Inc. for $5,500,000, including certain intercompany debt purportedly owed by Herby's to Campbell–Taggert in the amount of $2,800,000. Summit was a shell corporation created by Dunnam to purchase Herby's. Dunnam owned 100% of the voting securities of Summit and indirectly 100% of the voting securities of Herby's. After the acquisition, Snyder managed Herby's for Summit and Dunnam. Although Summit and Snyder sought third-party financing for the acquisition and working capital needs of Herby's, no independent lender would provide financing on terms acceptable to the acquirors. Consequently, Summit, Dunnam and Snyder provided the financing to Herby's. That financing forms the basis of their claims in this proceeding.

Summit paid on behalf of Herby's the $2,800,000 intercompany indebtedness to Campbell–Taggert as part of the acquisition agreement. In return, Herby's executed a promissory note in favor of Summit in the same amount. In addition, Herby's executed a security agreement dated October 26, 1987, in favor of Summit, by which Herby's pledged all of its equipment, inventory, accounts, chattel paper and general intangibles to secure repayment of the note. Summit filed its UCC–1 financing statement to perfect its interest in the collateral on November 10, 1988. Summit's claim on the note is $3,086,394.52.

Dunnam provided a working capital note facility to Herby's totalling $4,000,000. Herby's, in turn, executed a promissory note in favor of Dunnam for that amount and also granted Dunnam a security interest in Herby's equipment, inventory, accounts, chattel paper, general intangibles and proceeds. The security agreement was dated October 26, 1987. Dunnam filed its UCC–1 financing statement on June 9, 1989. Dunnam has asserted a claim against the estate in the total amount of $4,054,696.12.

Snyder asserts a claim against Herby's in the amount of $579,276.47 based on unsecured advances to Herby's and expenses paid on Herby's behalf during the period of January 6, 1989, through September 1, 1989.

Herby's initiated this bankruptcy case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code on September 7, 1989. On September 29, 1989, the United States Trustee appointed the committee which seeks through this complaint to subordinate the claims of Summit, Dunnam and Snyder to those of the other general unsecured creditors.

## II. Equitable Subordination

A. General Principles.

The doctrine of equitable subordination derives from the bankruptcy court's broad powers as a court of equity. *See Local Loan Co. v. Hunt,* 292 U.S. 234, 240, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1934). It represents the ability of the court "to prevent the consummation of a course of conduct by [a] claimant which ... would be fraudulent or otherwise inequitable" by subordinating its claims to the ethically superior claims asserted by other creditors. *In re Mobile Steel Co.,* 563 F.2d 692, 699 (5th Cir.1977), *citing Heiser v. Woodruff,* 327 U.S. 726, 733, 66 S.Ct. 853, 856, 90 L.Ed. 970 (1946). Equitable subordination allows the court to look beyond the form of a dispute or transaction to its substance, and to rearrange the priorities of claims based

upon the conduct of the creditors. *See Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). The Bankruptcy Code incorporates the doctrine of equitable subordination, empowering the bankruptcy courts to subordinate all or part of a claim to that of another interest or to transfer to an estate any lien securing a subordinated claim. 11 U.S.C. § 510(c)(1) and (2).

■ However, equitable subordination constitutes an unusual remedy which the Fifth Circuit directs should be applied only in limited circumstances. *In re Fabricators, Inc.*, 926 F.2d 1458, 1464 (5th Cir. 1991); *See also In re CTS Truss, Inc.*, 868 F.2d 146, 148–49 (5th Cir.1989). Equitable subordination should be limited to providing a remedy to specific harm suffered by creditors as a result of inequitable conduct. *In re Westgate–California Corp.*, 642 F.2d 1174, 1178 (9th Cir.1981); *Mobile Steel*, 563 F.2d at 701.

■ Equitable subordination is available only where a three-part test has been satisfied: (i) The claimant must have engaged in some type of inequitable conduct; (ii) The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant; and (iii) Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Code. *Mobile Steel*, 563 F.2d at 700; *Fabricators*, 926 F.2d at 1464–1465. Each prong of the three part test must be met to invoke equitable subordination. However, satisfaction of the test merely permits a court to subordinate claims; it does not compel subordination. *Fabricators*, 926 F.2d at 1464, n. 9.

### B. Insider Status.

■ The standard for invoking equitable subordination differs depending on whether the party against whom subordination is sought is an insider. Insiders are held to a higher standard of fidelity than unrelated third parties and the court will apply special scrutiny to insider behavior. *Fabricators, Inc. v. Technical Fabricators, Inc.*, 126 B.R. 239, 246 (S.D.Miss.1989).

■ The parties have agreed that Summit, Dunnam and Snyder are insiders, as defined by the Bankruptcy Code. 11 U.S.C. § 101(31). Summit owned 100% of the voting securities of Herby's and was thus an affiliate and insider pursuant to §§ 101(31)(E) and 101(2)(A). Dunnam owned 100% of the voting securities of Summit and indirectly 100% of the voting securities of Herby's and was thus an affiliate and insider. Snyder directed and controlled the affairs of Herby's and was thus an insider pursuant to § 101(31)(B)(iii).

### C. Inequitable Conduct.

■ Equitable subordination will only be applied when the claimant has engaged in inequitable conduct. A claimant's conduct can be characterized as inequitable if the claim arises from fraud, illegality, or breach of fiduciary duty; from undercapitalization of the debtor; or, from the use of the debtor as a mere instrumentality or alter ego. *In re Missionary Baptist Foundation of America, Inc.*, 818 F.2d 1135 (5th Cir.1987). The committee argues that Herby's was undercapitalized upon acquisition.

■ Undercapitalization constitutes a form of inequitable conduct. *Fabricators*, 926 F.2d at 1467. The claimants need not have had specific knowledge of Herby's undercapitalization. The standard for determining whether the debtor was undercapitalized is an objective rather than a subjective test. *Mobile Steel*, 563 F.2d at 703. The claimants need not have intended harm for subordination to be an appropriate remedy. The requirement is merely that harm resulted from the claimant's conduct. The test for determining whether the debtor was undercapitalized is "... whether, under the circumstances, reasonably prudent men with general business backgrounds would deem the company undercapitalized." *In re Multiponics, Inc.*, 622 F.2d 709 (5th Cir.1980). More specifically,

(1) Capitalization is inadequate if, in the opinion of a skilled financial analyst, it would definitely be insufficient to support a business of the size and nature of the bankrupt in light of the circum-

stances existing at the time the bankrupt was capitalized;

(2) Capitalization is inadequate if, at the time when the advances were made, the bankrupt could not have borrowed a similar amount of money from an informed outside source.

See Rembar, "Claims Against Affiliated Companies in Reorganization," 39 Colum.L.Rev. 907, 915–16 (1939).

Mobile Steel, 563 F.2d at 703; In re Fabricators, Inc., 109 B.R. 186, 194 (Bankr. S.D.Miss.1987), aff'd 926 F.2d 1458 (5th Cir.1991).

■ Herby's was undercapitalized on the acquisition date. The testimony of the financial analyst and the evidence submitted at trial established that the retained capital was insufficient to support a business the size and nature of the debtor. The claimants contend that they did not know about various insurance claims and truck rental liabilities. They concede that with these liabilities Herby's was undercapitalized. The claimants have suggested that misrepresentations concerning truck lease obligations and insurance coverage during the acquisition resulted in Herby's being undercapitalized. When the claimants became aware of those problems they could have injected additional equity capital into the business. They chose to advance funds to Herby's in the form of secured loans.

■ Undercapitalization alone may not be sufficient to justify equitable subordination. Some aggravating conduct may be required. Fabricators, 926 F.2d at 1469. Summit loaned Herby's $2,800,000 to fund the acquisition from Campbell–Taggert. Dunnam provided a loan to Herby's of $4,000,000 for working capital. Snyder advanced $579,276 to Herby's for working capital and expenses. The claimants' attempts to characterize as loans what were, in fact, equity capital contributions to the debtor constitutes an aggravating circumstance. Although they don't assert them here, the claimants secured their cash contributions to the debtor with liens on all of its equipment, inventory, accounts, chattel paper and general intangibles. The claim-

ants only perfected their security interests against the debtor's assets when it became clear that Herby's was unable to pay its debts. By this conduct the claimants elevated their status from equity holders to achieve priority over the unsecured creditors under circumstances where the debtor was undercapitalized after the acquisition. This conduct constitutes an aggravating factor justifying subordination of the claims of Summit, Dunnam and Snyder.

The claimants received a monthly management fee of $32,000 for consulting and management services and use of a computer. Although questionable in light of Herby's deteriorating financial condition, this payment to the claimants is not an aggravating factor. Management and computer services were rendered in exchange for the fee. The fee was minimal given the size of the operations involved.

D. Harm to Other Creditors.

■ Equitable subordination will only be applied where the inequitable conduct of the claimants resulted in an injury to the other creditors or conferred an unfair advantage on the claimants against whom subordination is sought. Mobile Steel, 563 F.2d at 700.

■ The claimants' conduct resulted in an injury to the other creditors of Herby's by significantly increasing their trade credit exposure and by reducing their dividend in liquidation. On the date Herby's was acquired, unsecured debt was approximately $900,000. By the time Herby's filed its petition for bankruptcy relief, less than two years later, the unsecured debt had increased to $4,600,000. While the increase of $3,700,000 in unsecured debt greatly increased other creditor's exposure, Summit and Dunnam were simultaneously seeking to protect their investments by positioning themselves as secured creditors. As general unsecured creditors, the claimants' debts substantially reduce the dividend available for the non-insider unsecured creditors. If the claimants are given general unsecured priority, the other general unsecured creditors will receive less than one-half their claims. If the claimants are

subordinated, the general unsecured claims may be paid in full. In addition, the other creditors were harmed by the significant increases in the average days outstanding for trade accounts payable. In December 1986, the average days outstanding for trade payables was approximately 7 days. By September 1989, the average days outstanding had increased to approximately 75 days.

Summit, Dunnam and Snyder also sought to gain an advantage in the priority scheme by positioning themselves as secured creditors. But for the insider preference avoidance capability, the secured creditors would have received dividends in liquidation while the trade creditors would have received nothing. Moreover, by characterizing their cash contributions to Herby's as loans rather than as equity capital, the claimants sought to guarantee their status in bankruptcy at least at the level of general unsecured creditors thereby significantly diluting any dividend otherwise available to the trade creditors.

E. Consistency with the Bankruptcy Code.

 Equitable subordination of a creditor's claims must not be inconsistent with the provisions of the Bankruptcy Code. *Mobile Steel,* 563 F.2d at 700. The claimants' capital contributions to Herby's took the form of loans when in reality they were equity contributions. Subordination of the claims of Summit, Dunnam and Snyder would ensure consistency with the absolute priority rule of 11 U.S.C. § 1129(b)(2) which requires unsecured creditors to be paid in full prior to equity owners receiving any distribution. Subordination would also be consistent with the priority scheme for liquidation in Chapter 7. Subordination would ensure that equity resulted based on the substance of the transaction rather than merely relying on its form. *Pepper v. Litton,* 60 S.Ct. at 244.

### III. *Level of Subordination*

 The Fifth Circuit has adopted a three-part test for equitable subordination. *Mobile Steel,* 563 F.2d at 700. The conduct of Summit, Dunnam and Snyder satisfies

that test. Subordination of their claims is appropriate. The committee argues that the claimants should be subordinated to the level of equity, consistent with the reality of their cash contributions to the debtor. The claimants argue that they have already abdicated their liens and that their claims should remain at the level of the general unsecured creditors.

 The general rule is that claims should be subordinated only to the extent necessary to offset the harm which the debtor and its creditors suffered as a result of the inequitable conduct. *In re Missionary Baptist II,* 818 F.2d at 1143; *Fabricators,* 926 F.2d at 1470. Summit, Dunnam and Snyder attempted to gain an advantage over other creditors of Herby's by characterizing equity contributions as secured loans. The claimants have not sought to enforce their liens and seek only general unsecured creditor status. If the claimants were given priority at the level of general unsecured creditors, the trade creditors would receive significantly lower dividends and the harm that resulted from the claimants' inequitable conduct will not have been remedied. Subordination of the claimants' interests to the other general unsecured creditors would reflect the reality of these transactions. It would achieve consistency with the Bankruptcy Code. And it would remedy the inequitable conduct of the claimants.

Although the claimants raise a concern that subordination of insider loans such as theirs may chill new investments in other companies, where capital infusion in fact constitutes equity investment, subordination may be appropriate to align the interest holders according to their true positions in the priority scheme of the Bankruptcy Code. The claimants attempted to rehabilitate an undercapitalized company. Had they succeeded, Herby's could have repaid their "loans." And, of course, they would have reaped the profits as well. But Herby's did not succeed. It has been liquidated in Chapter 11. Under this circumstance, the "loans" are equitably subordinated to assure that non-insider creditors

are paid in a bankruptcy liquidation before equity holders.

Based on the foregoing,

IT IS ORDERED that the claims of Summit, Dunnam and Snyder shall be subordinated to the claims of the general unsecured creditors pursuant to 11 U.S.C. § 510(c).

## ORDER DENYING MOTION TO AMEND OR MAKE ADDITIONAL FINDINGS OF FACT AND TO ALTER OR AMEND THE JUDGMENT

The defendants, Summit Coffee Company, Inc., Dunnam–Snyder Company, and The Snyder Company, Inc., move the court to amend or make additional findings of fact and to alter or amend the judgment pursuant to Bankruptcy Rules 7052 and 9023, incorporating Federal Rules of Civil Procedure 52 and 59. The court requested that the official unsecured creditors' committee respond to the defendants' motion. The committee filed a response on October 17, 1991.

### I.

The purposes of a Rule 52(b) motion are set forth in *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir.1986): to "correct manifest errors of law or fact or, in some limited situations, to present newly discovered evidence."

The defendants have not alleged that the court made "manifest" errors of law or fact but have asked the court to make additional findings 3(a) through (h) "based on uncontroverted evidence" and to amend its findings 4(a) through (d) to "correctly reflect" facts supported by the evidence.

The proposed findings 3 and 4 have either been dealt with by the court in its order entered September 6, 1991, and are therefore unnecessary or the proposed findings are not supported by the evidence.

### II.

The defendants also ask the court pursuant to Bankruptcy Rule 9023 to alter or amend its judgment so that the defendants' claims are allowed without subordination below the general unsecured creditors.

Because the motion does not present facts not already considered by the court or present new evidence, the motion to alter or amend the judgment is denied. *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285 (5th Cir.1989). The court will, however, make the following observations.

Undercapitalization of Herby's Foods is one of the categories that brought the defendants' conduct within the ambit for equitable subordination pursuant to 11 U.S.C. § 510(c). *In re Missionary Baptist Foundation of America, Inc.*, 818 F.2d 1135 (5th Cir.1987). The court used an objective test to determine whether Herby's Foods was undercapitalized. *In re Mobile Steel Co.*, 563 F.2d 692 (5th Cir.1977). The court does not question the business reasons for the actions taken by the defendants. Many of the defendants' proposed findings went to their good faith effort to operate the debtor. *See* Proposed Finding 3(d). The facts that pre-petition the defendants may have intended to revitalize the debtor and that post-petition they may have intended to negotiate with the creditors are irrelevant. Rather, the case turns on the fact that the effect of the defendants' actions on an undercapitalized company resulted in inequitable conduct.

The defendants sought third-party financing but could not find a lender. The defendants, insiders of Herby's Foods, chose to supply funds to the undercapitalized debtor on a secured basis. The effect of that action was to elevate the defendants to a level of priority over the unsecured creditors.

The court applied equitable subordination because the conduct of the defendants resulted in an unfair advantage over the noninsider unsecured creditors. *Mobile Steel*, 563 F.2d at 700.

IT IS THEREFORE ORDERED that the motion to make additional findings of fact is DENIED.

IT IS FURTHER ORDERED that the motion to alter or amend the judgment is DENIED.