In re Thomas L. FREYTAG and
Sharon N. Freytag, Debtors.

Thomas L. FREYTAG, Sharon N. Freytag, and James W. Cunningham,
Trustee, Plaintiffs,

v.

AMERICAN FEDERAL BANK, F.S.B.,
formerly known as Americity Federal
Savings Bank, Defendant.

Bankruptcy No. 390–30082–HCA–7.
Adv. No. 392–3393.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Feb. 12, 1993.

G. Roland Love, Trent A. Gudgel, McCauley, MacDonald, Love & Devin, Dallas, TX, for defendant.

Raoul Smyth, William F. LePage, Youngblood, King & Smyth, Dallas, TX, for plaintiffs.

## MEMORANDUM OPINION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT

HAROLD C. ABRAMSON, Bankruptcy Judge.

Came on for hearing in the above-captioned adversary proceeding on the 20th day of January, 1993, cross-motions for summary judgment and the plaintiffs' motion for leave to amend their complaint. Counsel for all parties submitted written briefs, appeared at the hearing, and delivered oral arguments.

This Court has jurisdiction over the subject matter of the motions under 28 U.S.C. § 1334. The motions are core proceedings under 28 U.S.C. § 157(b)(2)(A), -(B), -(E), -(K), and -(O) and 11 U.S.C. § 542.

After reviewing the parties' pleadings and briefs and hearing oral argument, the Court has concluded that the plaintiffs' motions for partial summary judgment and for leave to amend their complaint are denied. The defendant's motion for summary judgment is granted except on the issues of the amount of Americity's debt at foreclosure and turnover of alleged personal property.

### FACTUAL BACKGROUND

Thomas Freytag, at the time of most of the events described in this opinion, was a highly experienced lawyer and a name partner in Freytag & LaForce, a boutique firm of tax attorneys with offices in Dallas and other locations in Texas and California. His wife Sharon had raised the couple's children and then returned to school to earn a law degree. After amassing an impressive academic record at Southern Methodist University law school, including service as editor-in-chief of the law review, Sharon accepted a position with the respected firm of Haynes & Boone.

In 1978 Thomas and Sharon bought an unimproved lot in the well-to-do Preston Hollow neighborhood of Dallas. Texas Commerce Bank held a mortgage on the lot

and a note for the purchase price of $70,-000.

Five years later, in October 1983, the Freytags began to build a home on their lot. They paid off the land note, whereupon Texas Commerce Bank released its lien. The Freytags then signed a $700,000 deed of trust note for construction costs, payable to their contractor, The Holderby Company. The Holderby Company simultaneously assigned its note and its mechanic's lien on the property to InterFirst Bank Park Cities ("InterFirst" [1]). In April 1985 the Freytags borrowed an additional $130,-000 to finish the house, financed in the same manner and by the same parties as the 1983 construction loan.

In July 1985, the Freytags and their children moved into the new house, known as One Dorset Place. The following month, Thomas and Sharon executed a new deed of trust note to InterFirst for $830,000 to renew, extend, and consolidate the two construction notes.[2]

By March 1988, after various extensions and modifications, the InterFirst note had an outstanding balance of $872,675.76. Thomas Freytag's income had declined, and he began looking for ways to increase his cash flow until his fortunes could improve. To that end, he and Sharon decided to refinance One Dorset Place with Americity Federal Savings Bank ("Americity" [3]). Americity offered a refinancing program whereby mortgagors in certain wealthy neighborhoods of Dallas could obtain some "breathing room" in their mortgage payments. Americity would allow the Freytags to pay monthly interest-only payments at the rate of 1% per annum for approximately 14 months. Meanwhile, interest would accrue at a variable rate.[4]

On March 29, 1988, in preparation for the refinancing, Thomas and Sharon signed two deed of trust notes to InterFirst. The first note, for $872,675.76, renewed and extended the term of the existing consolidated construction note. The second was a new loan for $30,000, to be used for various items such as "points," taxes, insurance premiums, and attorney's fees. The Freytags also executed two deeds of trust to InterFirst to secure the two respective notes with One Dorset Place. Both deeds recited the fact that the $30,000 note was to be inferior in priority to the $872,675.76 note. InterFirst assigned the lien securing the $872,675.76 note to Americity.[5]

The following day, Thomas and Sharon signed a promissory note to Americity in the principal amount of $915,000. The $915,000 represented the following amounts:

| | |
|---|---:|
| Paid to InterFirst on existing note | $871,419.14 |
| Costs and fees of refinancing: | |
| Loan origination fee | 13,725.00 |
| Loan broker's fee | 9,150.00 |
| Reserve for future taxes | 7,107.95 |
| Reserve for future insurance premium | 6,980.49 |
| Title insurance costs | 3,927.70 |
| Appraisal fee | 800.00 |
| Attorneys' fee | 800.00 |
| Prepaid interest | 660.92 |
| Survey costs | 253.80 |
| Settlement fee | 100.00 |
| Recording fees | 45.00 |
| Tax search fee | 30.00 |
| Total costs and fees of refinancing | 43,580.86 |
| Total initial principal of Americity loan | $915,000.00 |

---

1. "InterFirst" will refer to both InterFirst Bank Park Cities, which is now defunct, and its successor-in-interest, First Republic Bank.

2. The two construction notes had, at that time, aggregate outstanding balances of $821,700. The total amount of the consolidated loan, $830,000, included an origination fee of $8,300.

3. "Americity" will refer to both Americity Federal Savings Bank and its successor-in-interest, American Federal Bank F.S.B.

4. The variable rate, to be adjusted semiannually, was the six-month U.S. treasury bill rate, rounded upwards to the nearest one-eighth of one percent, plus 4.25%.

5. InterFirst kept the $30,000 note and the lien securing it. Whether this "second lien" on One Dorset Place violated Texas homestead law is immaterial to the controversy before the Court today, i.e., the controversy between the Freytags and Americity over Americity's foreclosure of the lien, transferred to it by InterFirst, securing the $872,675.76 note.

Under the terms of the note, the Freytags were to enjoy their 14 months of "breathing room" and then, by July 1989, start making payments of deferred interest, principal, and interest. Instead, in June 1989 the Freytags obtained a modification of the Americity note to allow them to make reduced monthly payments of $4,000 per month until July 1990, when regular payments would be resumed on the increased deferred interest, principal, and interest according to a 30–year amortization.

In January 1990, Thomas and Sharon filed their Chapter 7 bankruptcy petition. By February 5, 1990, the principal balance on the Americity note had grown to $1,094,432.55. The Freytags stopped making payments, and on November 29, 1991, this Court modified the automatic stay to allow Americity to foreclose on One Dorset Place. Americity bought the property at the foreclosure sale for $1,300,000.

### THE PRESENT CONTROVERSY

The Freytags and the Chapter 7 trustee for their bankruptcy estate, James W. Cunningham, filed an adversary complaint on June 26, 1992. The complaint sought to avoid Americity's lien and the foreclosure sale on the ground that the Americity loan could not have been secured by a valid lien on One Dorset Place under the homestead laws of Texas. Alternatively, if Americity's lien was valid, the complaint sought the recovery of sums paid over and above $863,119.14, the sum asserted by plaintiffs to be characterizable as purchase money. The plaintiffs further pled that Americity should turn over certain items (to the Freytags if exempt, to the trustee if nonexempt), such as chandeliers and drapes, that the Freytags left inside One Dorset Place. Defendant Americity timely filed its answer to the complaint.

On November 20, 1992, the plaintiffs filed a motion for partial summary judgment on most of the substantive issues in the case. The defendants filed, with their response to the plaintiffs' motion, their own cross-motion for summary judgment, which apparently seeks summary judgment on all of the issues pled in the plaintiffs' complaint.

On December 23, 1992, approximately one month before a hearing was to be held on the cross-motions for summary judgment, the plaintiffs filed a motion for leave to amend their complaint. The proposed amended complaint, which was properly attached to the motion, added equitable subordination as a new ground for plaintiffs' recovery. Americity timely filed its objection to the motion for leave to amend.

### *Cross–Motions for Summary Judgment*

This Court finds that there are no material issues of fact with respect to the issues of the validity and extent of Americity's lien. Americity's lien is valid under Texas homestead law to the extent of the debt owed to Americity, including accrued interest and refinancing costs and expenses. The amount of the debt owed to Americity at the time of foreclosure remains a fact issue. As to the personal property asserted by the Freytags to remain inside One Dorset Place, Americity is entitled to keep the items only to the extent that they are fixtures. Because the Court finds that material issues of fact remain with respect to the character of these items, summary judgment on this matter is denied to both parties.

### *Summary judgment standards*

The Court of Appeals for the Fifth Circuit has recently summarized the federal procedure for adjudicating summary judgment motions:

Summary judgment is appropriate if the record discloses "that there is no genuine

issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* at 324–25, 106 S.Ct. at 2553–54. While we must "review the facts drawing all inferences most favorable to the party opposing the motion," *Reid v. State Farm Mut. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986), that party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

*Federal Deposit Insurance Corporation v. McCrary,* 977 F.2d 192, 194 (5th Cir. 1992).

### The Americity lien did not violate Texas homestead law

■ When the Freytags contracted for construction of One Dorset Place in 1983, they intended to use the property as a homestead and initiated overt acts (e.g., construction and financing) evidencing that intention. Under these circumstances, viewing the facts in the light most favorable to the plaintiffs, the One Dorset Place property became the Freytags' homestead in 1983. *See Davis v. McClurkan,* 378 S.W.2d 358, 360 (Tex.Civ.App.—Eastland 1964, no writ) ("in order to impress upon property a homestead character, in the absence of actual occupancy thereof, there must be an intention by the head of the family to reside upon it with his family as a home, coupled with some sort of overt act of preparation evidencing that intention"); *Surratt v. Thomas,* 233 S.W.2d 350, 352 (Tex.Civ.App.—Beaumont 1950, no writ) (same). Because of their purchase-money character, the liens securing the original construction notes for $700,000 and $130,000 were enforceable under Texas homestead law. TEX.PROP.CODE § 41.001(b)(1); TEX. CONST. Art. 16 § 50. The Freytags' subsequent consolidation, extensions, and renewals of those liens with InterFirst did not affect their characterization as enforceable purchase-money liens on a homestead. *M. Kangerga & Bro. v. Willard,* 191 S.W. 195, 199 (Tex.Civ.App.—Texarkana 1916, no. writ).

The Americity loan, as a further renewal, rearrangement, and readjustment of an obligation encumbering a homestead property, was likewise permissible under Texas law.

> The [homeowner] must necessarily have the right to renew, rearrange, and readjust [an] encumbering obligation; otherwise he might lose the homestead through foreclosure proceedings, and the very purpose of the constitutional inhibition against encumbering the homestead be defeated. In accomplishing this purpose [the homeowner] may change the form of the obligation so long as he acts in good faith and does not intentionally increase the burden on the homestead for purposes other than are necessary for the readjustment of the outstanding obligation.

*Machicek v. Barcak,* 170 S.W.2d 715, 717 (Tex.1943).

■ The note and deed of trust lien held by InterFirst involved a debt secured by a

purchase-money lien on One Dorset Place. The note and deed of trust held by Inter-First were directly assigned and transferred to Americity. Americity thereby succeeded to the rights of InterFirst as the holder of a valid debt and lien. Although Texas law recognizes contractual subrogation in such transactions, the subrogation doctrine is not necessary to this decision. *By direct contractual assignment* Americity became the owner and holder of a valid purchase-money lien on the homestead property of the Freytags.

This Court concludes that the adjustment of the payments to be made upon the note, the mode of interest calculation, and the additions of loan fees and other fees and expenses were all an integral part of the extension and renewal of the note to be acquired by Americity. There was no new advance of cash or alteration of the basic debt obligation; the renewal involved adjustment of the payments of interest and principal over a period of time and necessarily included Americity's costs in effectuating the transaction. The Freytags and Americity acted in good faith to preserve the Freytags' rights in One Dorset Place and did not "intentionally increase the burden on the homestead" within the meaning of *Machicek.*

Having considered the summary judgment evidence submitted by both Americity and the plaintiffs in the light most favorable to the plaintiffs, this Court concludes that, under Texas law, Americity held an enforceable purchase-money lien at the time of foreclosure. Americity is therefore entitled to summary judgment on all of the issues pled in the plaintiffs' complaint except for two issues on which neither party has met its burden of production and which therefore remain unanswered fact questions:

(1) Was certain property left in One Dorset Place by the Freytags personal property or fixtures?

(2) What was the amount of Americity's debt at the date of foreclosure?

### Plaintiffs' Motion for Leave to Amend Complaint

 Since the plaintiffs did not amend their complaint before the defendant filed its answer, and since the defendant objects to the amendment, the plaintiffs may only amend their complaint "by leave of court." FED.R.BANKR.P. 7015; FED.R.CIV.P. 15(a).[6] "[W]hether to allow an amendment is a decision to be made by the district court," reviewable only for abuse of discretion. *Topalian v. Ehrman,* 954 F.2d 1125, 1139 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

 In exercising its discretion under Rule 15(a), the trial court may consider such factors as undue delay, prejudice to the opposing parties, and futility of the proposed amendment. *Cranberg v. Consumers Union of United States, Inc.,* 756 F.2d 382, 392 (5th Cir.), *cert. denied,* 474 U.S. 850, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985). Where the amendment proposes to add new defendants who "stand in no different position than [defendants] already named" in the lawsuit, and the claims against the original defendants have been determined to be groundless, denial of leave to amend is not an abuse of discretion. *Emory v. Texas State Board of Medical Examiners,* 748 F.2d 1023, 1027 (5th Cir.1984). Similarly, the claim of equitable subordination asserted by the Freytags is based on a claim of illegal lending practices that is determined (pursuant to the cross-motions for summary judgment discussed *supra*) to be groundless.[7]

 Equitable subordination actions in bankruptcy are governed by 11 U.S.C.

---

**6.** Federal Rule of Civil Procedure 15(a) reads, "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

**7.** *See also* 3 MOORE'S FEDERAL PRACTICE ¶ 15.08[4] at 15–80 (2d ed. 1992) ("if a complaint or an answer, as amended, would be subject to a motion to dismiss under Rule 12(b)(6), or a motion to strike under Rule 12(f), it would be an idle move for the court to allow such an amendment over the objection of the opposing party who could simply make a formal motion to dismiss or strike after leave to amend is granted. Ac-

§ 510(c)[8] and by common-law principles.[9] In the Fifth Circuit, a bankruptcy court is permitted (but never *required*) to equitably subordinate a claim if three factors are present:

(1) the claimant must have engaged in some type of inequitable conduct;

(2) the misconduct must have resulted in injury to the creditors or conferred an unfair advantage on the claimant; and

(3) equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Code.

*Fabricators, Inc. v. Technical Fabricators, Inc. (Matter of Fabricators, Inc.)*, 926 F.2d 1458, 1464–65 (5th Cir.1991), citing *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 700 (5th Cir.1977). *See also Holt v. Federal Deposit Insurance Corporation (Matter of CTS Truss, Inc.)*, 868 F.2d 146, 148–49 (5th Cir.1989) (pointing out that "the unusual remedy of equitable subordination" has actually been confined by courts to cases in which a fiduciary of the debtor misuses his position to the disadvantage of other creditors, those in which a third party controls the debtor to the disadvantage of others, and those in which a third party defrauds other creditors).

 To invoke equitable subordination, all three prongs of the *Mobile Steel* test cited above must be met. *Herby's Foods, Inc. v. Summit Coffee Company, Inc. (In re Herby's Foods, Inc.)*, 134 B.R. 207, 211 (Bankr.N.D.Tex.1991) (Felsenthal, B.J.).

Under the facts pled in the plaintiffs' proposed amended complaint, the plaintiffs have not stated a claim for equitable subordination because they cannot meet the first prong of the *Mobile Steel* test. The plaintiffs describe, in their "Reply to Defendant's Response to Plaintiffs' Motion for Leave to Amend," a series of logical steps that they believe state a claim for equitable subordination:

(1) Americity's loan, mortgage, and foreclosure were illegal because they violated Texas homestead laws.

(2) Illegal behavior is tantamount to inequitable conduct under *Matter of Fabricators*, 926 F.2d at 1467.[10]

(3) Since Americity is guilty of illegal behavior, ergo inequitable conduct, the first prong of the *Mobile Steel* test has been met.

(4) The second prong of the *Mobile Steel* test has been met because "the value of assets available to other creditors was severely reduced by the foreclosure under the illegal mortgage and Deed of Trust, thus causing 'injury' to other creditors."

(5) The third prong of the *Mobile Steel* test has been met because "[equitable subordination] here is clearly consistent with the Bankruptcy Code because Americity acted illegally and inequitably when it secured its loan with the equity in the Freytags' home."

But this Court believes that Americity's lien, mortgage, and foreclosure did *not* vio-

---

cordingly, leave to amend in such circumstances properly may be denied.")

**8.** Section 510(c) reads:

Notwithstanding subsections (a) and (b) of this section [regarding the survival of otherwise valid liens in bankruptcy cases], after notice and a hearing, the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

(2) order that any lien securing such a subordinated claim be transferred to the estate.

**9.** "The legislative history [of 11 U.S.C. § 510(c)] indicates that equitable subordination is to be invoked according to case law existing at the time of codification, with development of the

concept being left to the courts." *Fabricators, Inc. v. Technical Fabricators, Inc. (Matter of Fabricators, Inc.)*, 926 F.2d 1458, 1464 (5th Cir. 1991).

**10.** [T]here have been recognized generally three categories of misconduct which may constitute inequitable conduct [under the *Mobile Steel* equitable subordination test]:

(1) fraud, illegality, and breach of fiduciary duties;

(2) undercapitalization; or

(3) claimant's use of the debtor as a mere instrumentality or alter ego.

*Matter of Fabricators*, 926 F.2d at 1467, citing *Wilson v. Huffman (In re Missionary Baptist Foundation of America, Inc.)*, 712 F.2d 206, 212 (5th Cir.1983).

late Texas homestead law. Nor were Americity's actions "inequitable" in any other way—Americity was not defrauding the Freytags, or wasting their assets, or "overreaching" (which would be practically impossible with debtors as sophisticated as the Freytags). *See Matter of Fabricators*, 926 F.2d at 1465 (in deciding whether a lender who is *not* an insider is guilty of "some type of inequitable conduct" under *Mobile Steel*, the court must find evidence of particularly egregious conduct such as fraud, spoliation, or overreaching).

██ Therefore, the plaintiffs have not pled any facts that could meet the first prong of the *Mobile Steel* test or, in turn, state a claim of equitable subordination against Americity. It would be futile to allow them to amend their complaint in a manner that could not withstand a Rule 12(b)(6) motion. The plaintiffs' motion to amend their complaint is therefore denied.

## CONCLUSION

Because Americity's lien on One Dorset Place was a permissible restructuring of an enforceable purchase-money obligation under Texas homestead law, the defendants' motion for summary judgment is granted on all issues pled in the plaintiffs' complaint except those regarding the amount of Americity's debt at the foreclosure date and the characterization of property left by the Freytags inside One Dorset Place as either personal property or fixtures. The plaintiffs' motion for partial summary judgment is denied as to all issues pled in that motion. Because Americity's conduct in making the Freytag refinancing loan was permissible under Texas law, the plaintiffs cannot state a claim for equitable subordination against Americity and are therefore denied leave to amend their complaint.

An order consistent with this memorandum opinion shall be entered forthwith.